484 So.2d 242 (1986)
Randi HENDRICKS, Plaintiff-Appellee,
v.
ACADIANA PROFILE, INC., et al.,[1] Defendants-Appellants.
No. 84-1116.
Court of Appeal of Louisiana, Third Circuit.
March 5, 1986.
*243 W. Thomas Angers, Lafayette, for defendants-appellants.
Domengeaux & Wright, Ross A. Brupbacher, Lafayette, for plaintiff-appellee.
Before GUIDRY, LABORDE and KNOLL, JJ.
GUIDRY, Judge.
Plaintiff, Randi Hendricks, filed suit against defendant, Acadiana Profile, Inc., and Trent Angers, the owner-manager, for commissions allegedly due. Plaintiff worked for defendant for approximately one year as an advertising salesperson.
Plaintiff alleged that during the year 1982 she sold advertising space for the defendants for the 1982 Acadiana Profile-Tour Guide issue and for the September/October issue of the magazine. Plaintiff completed all the work required of a salesperson in relation to the ads that were to be printed. The special Tour Guide issue was scheduled to be published on June 15, 1982 and the September/October issue had a September 3, 1982 scheduled publication date.
Plaintiff resigned from her advertising sales position on September 20, 1982. For reasons not made completely clear, the aforementioned two issues of Acadiana Profile were published late, some 45-90 days after plaintiff had resigned. All of the ads that plaintiff sold were published in the two late issues.
Plaintiff offered evidence at trial that she was owed $627.00 in commissions for the Tour Guide issue and $921.75 in commissions for the September/October issue.[2] Defendant urged that plaintiff was owed nothing in commissions since she was not employed by Acadiana Profile when the two issues were published. In support of their assertion, defendants offered the Acadiana Profile Sales Manual which states, in pertinent part as follows:
"Commissions are paid ad sales representatives on the first payday following the pay period in which they are sold. Where ad schedules are concerned, commissions are paid on all ads after the first ad upon publication of the edition containing these ads, so long as the sales representative is actively employed by *244 the company when these issues are published." (Emphasis ours).
In rendering judgment for plaintiff, the trial court concluded that the Sales Manual does not provide for late publications; plaintiff was not responsible for the late publications; and, plaintiff had a right to rely on defendant's assertions that it would publish the two issues as stated in the publication schedule.
The trial court rendered judgment condemning Acadiana Profile, et al, to pay plaintiff the sum of $800.00, with legal interest and $200.00 in attorney's fees. From this judgment defendant has taken this suspensive appeal.

ISSUES
Defendant-appellant presents three issues for our consideration:
1. Whether the plaintiff should be paid the commissions claimed.
2. Whether the Lafayette City Court judgment was defective on its face in that it holds both defendants liable, but only names one defendant and does not state whether or not the judgment is in solido.
3. Whether attorney's fees should have been granted.

COMMISSIONS
Defendant contends that plaintiff is not due the commissions from the sale of the ads for the two issues because she was not working for the magazine when the two issues were published. Defendant argues that plaintiff was fully aware of the paragraph in the sales manual pertaining to the payment of commissions for one-time ads and scheduled advertisements, ads that are run in a series of magazine issues. Plaintiff argues that she is entitled to the commission because, although she was aware of an understood the payment of commissions paragraph, she would have been working for the magazine at the time of publication if the two issues had been published in accordance with the 1982 publication schedule.
At the time this dispute arose, the Civil Code articles on obligations had yet to be revised. Two obligations articles prior to the 1984 revisions bear significantly in our discussion:
C.C. art. 1901 states:
"Agreements legally entered into have the effect of laws on those who have formed them.
They can not be revoked, unless by mutual consent of the parties, or for causes acknowledged by law.
They must be performed with good faith."
C.C. art. 1903 states:
"The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect."[3]
Plaintiff was aware of the payment of commissions paragraph in the sales manual. She admitted to having read the whole manual when she first went to work for Acadiana Profile, and she indicated that she thought the paragraph meant that a salesperson would not get a commission from sales of schedule advertisements unless that person was employed by the magazine at the time of publication. In that respect, the paragraph had the effect of law between the two parties. C.C. art. 1901.
However, C.C. art. 1901 must be read in conjunction with C.C. art. 1903. In National Safe Corp. v. Benedict & Myrick, Inc., 371 So.2d 792 (La.1979), the Supreme Court interpreted the two articles:
"Article 1901 of the Civil Code requires good faith performance of all agreements. A principle of implied obligations *245 in contracts is also stated in Article 1903 of the Code in these words: "The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect." The effect of equity on implied obligations is expressed in Article 1964 in these terms: "Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources." Insofar as pertinent here, the "equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us...." La. Civil Code art. 1965.
From these pronouncements we are reminded that not all obligations arising out of contract need by explicitly stated. Into all contracts, therefore, good faith performance is implied. Furthermore, everything that by equity is considered incidental to the particular contract, or necessary to carry it into effect, is also a part of all agreements. And, as Article 1964 of the Civil Code makes clear, equity will supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from that source."
In the instant case, the defendant hired the plaintiff to sell advertising space in the Acadiana Profile. Plaintiff performed her obligations. Defendant admitted that plaintiff had actually sold the space she claimed to have sold for the two issues.
Plaintiff, while out meeting potential clients, carried a Media Kit which contained a listing of advertising, space rates and a listing of the 1982 publication schedule. When she gave her sales pitch to potential clients, part of her strategy included showing the clients the specific publication date for each issue. The publication schedule listed a series of deadlines for each specific issue, and gave no indication that the given dates were subject to any change. For the special Tour Guide issue, for instance, the publication schedule gave a space reservation deadline and a copy deadline that was one month earlier than the publication date, which in this case was to have been June 15, 1982. In this manner, the plaintiff was able to secure advertising for the magazine months before actual publication. Apparently the plaintiff and the potential customers strongly relied upon the publication schedule which had been supplied by the defendant.
Defendant contends that the publication schedule is just a proposed guideline and that the publication date often has to be altered for various reasons. However, other than the defendant's self-serving testimony, there was only one other defense witness presented and he testified that the ads run at his radio station were run on schedule. He could only remember one time in the past, during a hurricane, that he had to delay the broadcasting of an advertisement.
We agree with the trial court that a reasonable interpretation of the sales manual commission payment paragraph must take into consideration the publication schedule which the defendant presented to the plaintiff for her use, and upon which the plaintiff relied. C.C. art. 1903.
Ms. Hendricks, in good faith, had completed all of the work necessary for the ads to appear in the two issues. One of the issues, the Tour Guide, was even at the publishers waiting to be printed when she left the magazine. Ms. Hendricks was not responsible for the late publication of the two issues in question. Lastly, the sales manual does not provide for late publications.
Under these circumstances, it was reasonable for the plaintiff to assume that her commissions would be paid. The employer benefited from the plaintiff's work performance. Equitable considerations and the requirement of good faith requires the employer to pay for the benefit he has received and not to unjustly enrich himself through the efforts of his salespeople. The *246 christian principle spoken of in National Safe, supra, would be violated if we were to hold otherwise. We thus affirm the trial court's judgment on this issue.[4]

WORDING OF THE JUDGMENT
Appellant argues that the judgment is unclear in that it does not specifically name who the judgment is against or whether the judgment is in solido. Appellee agrees that the wording of the judgment is ambiguous and should be changed to only include the corporate defendant. We will amend the judgment accordingly.

ATTORNEY'S FEES
Appellants argue that the trial court should not have awarded attorney's fees since no penalties were awarded. We disagree.
It is well settled that an award to a plaintiff for the untimely payment of wages or commissions is to be accompanied by an award of reasonable attorney's fees, regardless of the existence of any grounds for the imposition of penalties. Pearce v. Austin, 465 So.2d 868 (La.App.2d Cir.1985); Carriere v. Pee Wee's Equipment Co., 364 So.2d 555 (La.1978); La.R.S. 23:632.
For the above and foregoing reasons, the judgment of the trial court is recast to read as follows:
"IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, RANDI HENDRICKS, and against the defendant, ACADIANA NEWS AGENCY, INC., d/b/a ACADIANA PROFILE, in the full sum of EIGHT HUNDRED AND NO/100 ($800.00) DOLLARS, with legal interest thereon from the 11th day of March, 1983, until paid, plus the sum of TWO HUNDRED AND NO/100 ($200.00) DOLLARS as attorney's fees and all costs of these proceedings."
Defendant, Acadiana News Agency, Inc., d/b/a Acadiana Profile, is cast for all costs of this appeal.
AFFIRMED AS AMENDED.
NOTES
[1] The record reflects the correct name of the corporate defendant to be Acadiana News Agency, Incorporated, doing business as Acadiana Profile.
[2] In her petition, plaintiff sought judgment in the total sum of $800.00 plus penalties and attorney's fees. Defendant timely objected to any evidence enlarging the pleadings as to the amount claimed. The trial court sustained defendant's objection and plaintiff makes no issue as to the correctness of this ruling.
[3] C.C. arts. 1901 and 1903 were amended and re-enacted by Acts 1984, No. 331, § 1. The content of C.C. art. 1901 can now be found in the new C.C. arts. 1983, 2004, 2014, 2018, 2020, 2022, 1759, 1980, 1951. The content of C.C. art. 1903 can now be found in new C.C. arts. 1951, 2002, 2014, 2018, 2020, 2053, 2054.
[4] Although unnecessary to our decision, we observe that the evidence produced at trial did not adequately show whether the ads the plaintiff sold were one time ads or scheduled ads.