Alcide **FORET** and Bobby J. Dantin, Plaintiffs–Appellants,

v.

**SOUTHERN FARM BUREAU LIFE IN-SURANCE CO.,** Defendant–Appellee.

No. 89–3866.

United States Court of Appeals, Fifth Circuit.

Dec. 6, 1990.

As Modified on Denial of Rehearing Jan. 15, 1991.

Ralph D. Hillman, Thibodaux, La., for plaintiffs-appellants.

Rutledge C. Clement, Jr., Amelia Williams Koch, Paul M. Newton, Jr., Harry A. Rosenberg, Phelps Dunbar, New Orleans, La., for defendant-appellee.

Before THORNBERRY, GEE, and SMITH, Circuit Judges.

THORNBERRY, Circuit Judge:

Terminated salesmen for an insurance company brought separate but identical suits in Louisiana state court against their former employer for renewal commissions on policies they had sold during their term of employment. The insurance company removed the cases to federal district court, arguing that the salesmen had made a colorable claim for attorney's fees and that such fees, when added to the total damages requested by the salesmen, met the amount required for federal jurisdiction. The district court took jurisdiction of the cases and granted summary judgment for the insurance company, finding that the matter was barred by res judicata. Salesmen chal-

lenge the jurisdiction of the district court and, alternatively, appeal the district court's order granting the defendant's motion for summary judgment based on res judicata. The district court properly invoked federal jurisdiction, and, finding no error, we AFFIRM its order granting summary judgment for the defendant. We also conclude that this was a frivolous appeal, and, therefore, we award sanctions on appeal to defendant sua sponte, under Fed. R.App.P. 38, in the amount of attorney's fees, which will be determined by the district court on remand.

## I.  FACTS AND PROCEDURAL HISTORY

Alcide Foret and Bobby J. Dantin, plaintiffs-appellants, were employed by Southern Farm Bureau Life Insurance Company ("Southern Farm"), defendant-appellee, as "agency managers" (i.e., insurance salesmen) until their termination in 1979. Their employment contract with Southern Farm included a provision providing that the salesmen would receive renewal commissions (commissions paid when customers to whom they had originally sold insurance renewed their policy) as long as they did not directly compete with Southern Farm for one year after leaving the company. Foret and Dantin violated this provision of the contract by accepting work with a competing insurance company within a year, and Southern Farm refused to pay them renewal commissions.

In 1984, Dantin then joined with Foret and other insurance salesmen who had been terminated by Southern Farm to file an antitrust class action against the insurance company. Among other things, the salesmen asserted that Southern Farm had wrongfully denied them their renewal commissions. *See Gribbin v. Southern Farm Bureau Life Ins. Co.*, 1984–1 Trade Cas. (CCH) ¶ 65,798 (W.D.La.1984), *aff'd*, 751 F.2d 1257 (5th Cir.1985). The case was

eventually dismissed as barred by the McCarran–Ferguson Act, 15 U.S.C. § 1012.

Dantin and Foret made another attempt to secure renewal commissions from Southern Farm in May 1989, when they filed a joint breach of contract suit in Louisiana state court. Their complaint alleged that Foret was owed $65,000 and Dantin $35,000. Southern Farm removed the case to federal district court, where Dantin and Foret responded by voluntarily·dismissing their lawsuit. Only three days later, Dantin and Foret re-filed separate but identical breach of contract suits in Louisiana state court. The new complaints were exactly the same as the prior joint complaint except that the amount of renewal commissions that each sought had now been changed to $49,500, and a request for attorney's fees had been added. Southern Farm again removed to federal court, arguing that the request for attorney's fees was enough to raise the amount in controversy over the $50,000 jurisdictional minimum.[1] Curiously, Dantin and Foret sought remand by arguing that they had no statutory or contractual right to the attorney's fees, which they were now requesting, and that, therefore, the fees should not be included as part of the amount in controversy. The district court originally granted the motion for remand, but, upon a motion for reconsideration, it concluded that Dantin and Foret did have a colorable claim for attorney's fees under sections 23:631 and 23:632 of the Louisiana Revised Statutes ("La. Rev.Stat."). Finding that the amount in controversy exceeded the jurisdictional minimum, the district court proceeded to dispose of the case by granting summary judgment for Southern Farm based on the res judicata effect of *Gribbin*. On appeal, Dantin and Foret persist in contesting the merit of their own claim for attorney's fees and alternatively argue that the district court's determination of res judicata was erroneous.

---

**1.** The parties do not dispute that they are citizens of different states, which is also required

by the jurisdictional statute. *See* 28 U.S.C. § 1332(a).

## II. DISCUSSION

### A. Jurisdictional Amount

Neither party disputes that attorney's fees may be included in determining .the jurisdictional amount. *See Graham v. Henegar*, 640 F.2d 732, 735 (5th Cir.1981); *Premier Indus. Corp. v. Texas Indus. Fastener Corp.*, 450 F.2d 444, 447 (5th Cir. 1971). *See also* 14A C. Wright & A. Miller, *Federal Practice & Procedure* § 3712, at 176 (2d ed. 1985) ("The law is now quite settled that attorney's fees are a part of the matter in controversy when they are provided for by contract or by state statute." (footnote omitted)). The dispute is whether the claim for attorney's fees can be supported under Louisiana law. Surprisingly, Dantin and Foret argue that their own claim for attorney's fees is without merit. Had this been the case, the trial court could have assessed Rule 11 sanctions against counsel for appellants; however, the court found that a legal basis for attorney's fees did exist, and we find no error in that determination.

■ In *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 58 S.Ct. 586, 82 L.Ed. 845 (1938), the Supreme Court held that the amount claimed by plaintiffs is controlling when jurisdiction is challenged on the basis of the amount in controversy: "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Id.* at 288–89, 58 S.Ct. at 590. When the jurisdiction of a federal court is challenged, that court has a duty to make the inquiries necessary to establish its own jurisdiction. *See Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 666 (5th Cir.1971). The trial court is not required to follow any set procedure in determining whether the jurisdictional amount has been satisfied. "[T]he blueprint of the method of determining the length and breadth of the amount in controversy is entirely within the discretion of the trial court." *See id.* at 667.

■ In the case before us, the trial court determined that a claim for attorney's fees could be supported under La.Rev.Stat. §§ 23:631 and 23:632, even though the sections were not cited in the complaint. The court did not abuse its discretion in finding that jurisdiction existed. The court would have been required to remand the case to the Louisiana state court *only* if it appeared to a legal certainty that the claim was really for $50,000 or less. Because the claim included a request for attorney's fees, and because that request could be supported by Louisiana law, the plaintiffs could have recovered more than $50,000.

Dantin and Foret argue that a plain reading of section 23:631 indicates that the statute does not apply to their case. Section 23:631, in pertinent part, provides that: ·

Upon the discharge or resignation of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of the employment, whether the employment is by the hour, day, week, or month, not later than three days following the date of discharge or resignation.

Section 23:632 allows for the recovery of penalty wages against an employer who fails to comply with the preceding section, and also provides for the assignment of attorney's fees, stating that:

Reasonable attorney fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after three days shall have elapsed from time of making the first demand following discharge or resignation.

Dantin and Foret point out that section 23:631 refers to payments due at the time of resignation or discharge, and they argue that the renewal commissions they seek were not due until customers renewed their insurance policies, which could have

occurred some years after their termination. While this might be a plausible reading of the statute, Louisiana courts have interpreted the statute more broadly. This precise issue was addressed in *Pearce v. Austin*, 465 So.2d 868 (La.App. 2d Cir. 1985).

In *Pearce*, a Louisiana court of appeals overturned a trial court's denial of attorney fees to an employee who was seeking commission payments. The trial court in *Pearce* had accepted the same argument urged here by Dantin and Foret: that the statute was inapplicable because the employee's "commissions were not, at the time of [the employee's] resignation, 'then due'." *Id.* at 872. The Louisiana appellate court responded that the "trial court gave a narrower reading to the statute than intended by the legislature" and concluded that the employee was entitled to attorney fees under the statute. *Id.* at 872–73. Foret and Dantin attempt to distinguish *Pearce* on the ground that the employee and his employer signed a letter agreement fixing the amount of the employee's "anticipated" commissions at the time of his resignation. However, that letter agreement did not provide that the commissions were due immediately; instead, the parties intended, as was the customary business practice, that the commissions be paid when the job was completed.

Other Louisiana courts have applied sections 23:631 and 23:632 in suits initiated for the purpose of collecting commission payments. *See, e.g., Hendricks v. Acadiana Profile, Inc.*, 484 So.2d 242 (La.App. 3rd Cir.1986) (awarding attorney's fees in suit for commissions from the sale of ads); *Rubenstein Bros. v. LaForte*, 320 So.2d 303 (La.App. 4th Cir.1975) (awarding attorney's fees in suit for commissions from the sale of "special order" clothing, which customers could later reject). Finally, Louisiana courts specifically have found that section 23:632 mandates an award of reasonable attorney's fees whenever an employee files a well-founded suit for any unpaid wages or commissions. *See Carriere v. Pee Wee's Equipment Co.*, 364 So.2d 555, 556 (La. 1978); *Hendricks*, 484 So.2d at 246;

*Pearce*, 465 So.2d at 873; *Rubenstein*, 320 So.2d at 307.

Given this list of Louisiana cases, we are at a loss to understand how appellants could have determined, in good faith, that appeal of the district court's determination on this issue was warranted. By signing the pleadings, counsel for appellants not only represented that he had read the pleadings but certified that such pleadings were "well grounded in fact ... warranted by existing law ... and that [such pleadings] [were] not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed.R.Civ.P. 11; La.Code Civ.Proc.Ann. art. 863(B) (West Supp.1990). For counsel to now argue against the facts and claims contained in those pleadings is somewhat disingenuous if not totally spurious. Louisiana case law clearly showed that attorney's fees could be supported in the type of suit brought by appellants, and this should have convinced them that they could not meet the heavy burden of the legal certainty test established in *St. Paul.*

The district court committed no error by exercising jurisdiction over this matter and was justified in refusing to remand the case to the Louisiana state court.

### B. Res Judicata

For the claim made by Dantin and Foret to be barred by res judicata the district court must have found that: 1) the prior judgment was rendered by a court of competent jurisdiction, 2) the parties to both suits were identical, 3) the prior judgment was a final judgment on the merits, and 4) the prior judgment was based on the same cause of action. *See Nilsen v. City of Moss Point*, 701 F.2d 556, 559 (5th Cir. 1983) (en banc).

There is little doubt that the first three elements of the *Nilsen* test have been met. First, Foret and Dantin do not dispute that the federal district court had jurisdiction over the *Gribbin* suit. They do argue, however, that the federal district

court was limited to considering their federal antitrust claims and could not have considered their state-law challenges to the covenant not to compete. This argument is frivolous, as the federal court had pendant jurisdiction over such claims. Second, Dantin and Foret cannot deny that both they and Southern Farm were parties to the *Gribbin* suit. Although Dantin and Foret attempt to downplay their participation in *Gribbin* by pointing out that the suit was a class action, they were still parties for the purposes of res judicata. They were, in fact, among the named class representatives in the *Gribbin* case. Finally, the *Gribbin* case proceeded to a final judgment on the merits with a finding that the suit was barred by the McCarran–Ferguson Act. This leaves us with the final element of the res judicata test: whether the two actions involved the same cause of action.

" 'This Court has recognized that the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action." *Nilsen*, 701 F.2d at 559 (quoting *Kemp v. Birmingham News Co.*, 608 F.2d 1049, 1052 (5th Cir.1979)). The district court's *Gribbin* opinion makes it clear that the plaintiffs placed their renewal commissions at issue by arguing that a covenant not to compete was an antitrust violation and demanding payment of those commissions notwithstanding the covenant. Dantin and Foret argue that *Gribbin* did not involve the same cause of action as the suit now before us, because *Gribbin* was an antitrust suit. But "[w]hen two successive suits seek recovery for the same injury, 'a judgment on the merits operates as a bar to the later suit, even though a different legal theory of recovery is advanced in the second suit.' " *Nilsen*, 701 F.2d at 564 (quoting *Cemer v. Marathon Oil Company*, 583 F.2d 830, 832 (6th Cir.1978)). Simply because Dantin and Foret had more than one remedy available to them does not entitle them to "assert them serially, in successive actions." *Id.* at 560. Dantin and Foret could have litigated any state-law challenge to the covenant in *Gribbin;* having failed to do so, they may not advance them now.

Again, we find ourselves at a loss to understand how appellants, in good faith, could have appealed the district court's finding on this particular issue. The law on res judicata is well established and its application to this case has raised no complex or novel circumstances that might have merited the attention of an appellate court. Appellants have failed to make any reasonable arguments against application of res judicata and have failed to argue for a plausible modification or reversal of this doctrine. The district court's determination on this issue must stand.

## III. CONCLUSION

The law plainly demonstrates that the district court committed no error, and we affirm its judgment. Because we believe this appeal to have been frivolous, we also have decided, in accordance with Fed. R.App.P. 38, to award Southern Farm compensation for defending this appeal.

Although we welcome and encourage legitimate appeals, we cannot allow the limited resources of this court to be expended on appeals which "make no reasonable argument for extension, modification, or reversal of precedent clearly elaborated by the district court." *Coghlan v. Starkey*, 852 F.2d 806, 809 (5th Cir.1988). While judges, staff and support personnel have expended energy to dispose of this meritless appeal, justice has been delayed for truly deserving litigants. Additionally, Dantin and Foret have delayed justice for Southern Farm and have needlessly put the company to the expense of defending their judgment. Sanctions are warranted, and we may impose them sua sponte. *See id.* at 808. We remand the case to the district court for a determination of the attorney's fees that have been incurred by Southern Farm in defending this appeal, and instruct the court to then enter a judgment ordering appellants to reimburse appellee for those fees.

AFFIRMED AND REMANDED.