DOMENGEAUX, Chief Judge.
Wayne Moses filed suit against his former employer, Harold Muse, d/b/a Muse Hill Nursery, for money allegedly due under his employment contract. After the plaintiff presented his case to the trial judge, a judgment of involuntary dismissal was granted and plaintiffs suit was dismissed. Plaintiff appeals and we affirm.

FACTS

Harold Muse opened the Muse Hill Nursery in 1984. After a few years, and because he was involved in another business, Muse hired Moses as the full time manager of the nursery. Muse and Moses agreed that as his salary Moses would receive 30% of the gross income of the nursery.
Muse testified that he has never recognized a profit from the nursery. After Moses was paid his 30%, the remaining 70% was used to pay the expenses of the business, such as supplies and wages of other employees. As a result, some time in 1991, Muse and his wife decided to offer Moses a reduced salary of 20% of the sales, or a weekly salary of $200.00 plus 5% of the sales. Moses declined the offer and quit his job.
In this suit, Moses seeks payment of 30% of all sales made of stock sold after he quit but which had been planted during his employment. Moses contends that because he produced the inventory, he is entitled to payment once that inventory is sold. The trial judge characterized the plaintiffs position as the claim,of a vested interest in unsold inventory or growing stock. Muse and Moses agree that Moses received his 30% share of all sales made up to the date he quit.
The record reveals that as manager of the nursery, Moses was required to oversee production of the stock and take care of customers. He managed employees, directed the *1132 planting and care of new stock, and promoted sales. Moses performed some duties after hours, such as watering the plants. Any expenses incurred in the course of his management responsibilities were reimbursed by the nursery.
Moses’ claim to a postemployment sales percentage is based on his belief that because he planted and nurtured the stock, he is entitled to the fruits of his labor. Specifically, Moses’ counsel argues that the employment contract provided for the payment sought in this suit. We agree with the trial judge’s conclusion that Moses neither offered nor proved any legal basis for his claim, and we will discuss the contractual theory as well as alternate theories not necessarily articulated as such by Moses or his counsel.

THE CONTRACT

First, the oral employment contract between Muse and Moses, all witnesses agreed, was a “thirty-seventy split,” i.e., Moses was to receive 30% of gross sales. That was the extent of the contract and no witness testified otherwise, including Moses himself. In fact, the parties stipulated to this agreement. The employment contract was adequately proved for purposes of La.C.C. Art. 1846; it simply did not contain the provisions suggested by plaintiffs counsel. There was no provision in the contract that Moses would receive a percentage of unsold or growing stock upon termination of his employment. There was also no provision in the contract that Moses had a vested interest and right in future sales.
In McNeill v. Peeler, 103 So.2d 519 (Orl.App.1958), where the plaintiff sought a percentage of collections after her termination, the court noted that to permit the plaintiff to recover a percentage of the income accruing after her contract with the defendant terminated would be equivalent to allowing her salary to continue although she was no longer in the defendant’s employ. 103 So.2d at 520. The same rationale applies herein.

PRINCIPLES OF EQUITY

Moses did not prove that he is entitled to recover under the theories of unjust enrichment or quantum meruit. The parties discussed these principles in the context of commission salesmanship. During the course of his employment, Moses executed his responsibilities to direct and oversee the planting of the nursery’s stock. He was compensated for this and other job duties with 30% of the nursery’s current sales. There was no evidence that Moses incurred any expenses or expended any efforts which were uncompensated at the termination of his employment. Likewise, Harold Muse was not unjustly enriched at the expense of Wayne Moses. Certainly Muse benefited from Moses’ labor; he had plants which were ready or nearly ready to be sold when Moses quit. But Muse paid all expenses of that production; he paid the salaries of the laborers and the costs of the planting. He still had to complete production and negotiate sales after Moses quit.
Moses’ job was to manage the business, which included overseeing production of the plants; he was paid for that job out of current sales. These duties are similar to the plaintiffs duties in the McNeill case. McNeill was a manager of placements in an employment agency whose salary was to be based on the amount of the gross revenue actually collected each month and derived from persons whose placements she handled. Likewise, Moses performed a variety of tasks and was paid a percentage of gross revenues. Moses cannot be considered a commission salesman based on this arrangement, as the parties have strenuously debated in briefs to this court.
In cases involving commission salesmen and brokers, the courts usually look to the nature of the sales to determine whether an employee is entitled to post-termination income. These decisions are usually based on the equitable principles of unjust enrichment and quantum meruit. In Hendricks v. Acadiana Profile, Inc., 484 So.2d 242 (La.App. 3d Cir.1986), the plaintiff sold magazine advertising space for two issues that were scheduled for publication in June and September of 1982. When the plaintiff resigned at the end of September, neither issue had been published. The court found the plaintiff had completed all work necessary for the *1133 ads to appear in the two issues and the employer should not be unjustly enriched by the efforts of his sales people. Similarly, the plaintiff in Howser v. Carruth Mortgage Corp., 476 So.2d 830 (La.App. 5th Cir.1985), was a loan originator who sought post-termination fees on loans she negotiated while in the defendant’s employ. The court looked at the facts surrounding the loans at issue and determined the plaintiff was entitled to one fee which was actually earned at the time of her resignation. On the remaining loans, however, the plaintiff had not earned her fee because substantial time and effort remained for completion of the loans. See also Fox v. Don Siebarth Pontiac, Inc., 458 So.2d 575 (La.App. 3d Cir.1984), writ denied, 461 So.2d 314 (La.1984), and cases cited therein.
The instant ease is not analogous to the claim of a commission salesman. Moses was paid 30% of gross sales. The record does not indicate that Moses was paid on a per sale basis or that he was paid only on sales that he personally consummated. Furthermore, the equitable principles which were determinative in the aforementioned cases are not pertinent to the simple contractual dispute in the instant case.

ARTICLE 3217

The claim asserted herein is somewhat analogous to the privilege of a farm or plantation overseer which is described in La.C.C. Art. 3217(1). According to that provision, an overseer holds a privilege on the crops of the current year, and the proceeds thereof, for payment of his salary. Moses did not proceed under this article or argue for its applicability. We mention this article only for the sake of completeness and note that the facts presented by the plaintiff would not support the privilege described.

OTHER ISSUES

We turn now to the remaining issues urged by the plaintiff in this appeal. First, we find no error in the evidentiary rulings of the trial court. The trial judge properly allowed the defense to cross examine a witness about the good character of the defendant after the plaintiff attacked the defendant’s credibility. Second, we also find no indication anywhere in the record of bias or partiality on the part of the trial judge. In fact, the trial judge was fair and made an effort to understand the arguments of plaintiffs counsel and explain to her the legal basis for his rulings. We find no merit to these contentions.

DECREE

For the foregoing reasons, the judgment of involuntary dismissal rendered against the plaintiff, Wayne Moses, is affirmed, at plain-' tiffs cost.
AFFIRMED.
SAUNDERS, J., concurs in part and dissents in part and assigns reasons.