**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 02-10171
Summary Calendar

RICARDO CANTU,

Plaintiff-Appellant

versus

NOCONA HILLS OWNERS ASSOCIATION, a non-profit Texas Corporation;
JACK AMON, individually and as president of the Board of Directors
of the Nocona Hills Owners Association; KENNY NELSON, individually
and as a member of the Board of Directors of the Nocona Hills
Owners Association; GARLAND MURRAY,

Defendants-Appellees

Appeal from the United States District Court
For the Northern District of Texas
(7:00-CV-220-R)
July 12, 2002

Before DAVIS, BENAVIDES, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff Ricardo Cantu brought a civil rights lawsuit
against his homeowner's association and other related defendants
under 42 U.S.C. §§ 1981 and 1982. The District Court granted
summary judgment in favor of all defendants with respect to all
claims because plaintiff failed to establish a *prima facie* case of
discrimination. Plaintiff initiated appellate review, but since his

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

brief evinces little interest in pursuing a meaningful appeal, we affirm and give notice that he and his lawyer are subject to sanction.

## I. Procedural History

Plaintiff's complaint alleged, among other things, that defendants violated his rights under the Fair Housing Act of 1968, as amended, 42 U.S.C. §3601 *et seq.* ("FHA"). On July 30, 2001, the District Court dismissed the FHA claim without prejudice for failure to state a claim, *see* FED. R. CIV. P. 12(b)(6), and dismissed all claims against defendant Joe Murray. Plaintiff was permitted 30 days to amend his complaint to preserve the FHA claim or any claim against Joe Murray. Plaintiff did not amend his complaint, nor did he challenge these rulings on appeal, so they are not before this court.

Plaintiff's complaint also asserted civil rights claims under 42 U.S.C. §§ 1981 and 1982. On January 11, 2002, the District Court granted summary judgment in favor of all defendants on the § 1981 and § 1982 claims. Plaintiff now challenges the ruling on appeal.

## II. Background Facts

Plaintiff Ricardo Cantu, a Mexican-American, owns approximately 100 residential lots in the community of Nocona Hills, located in Montague, Texas. Cantu and his wife live on one of the lots.

All lot owners are members of the Nocona Hills Owners

2

Association ("NHOA") and elect its Board of Directors ("BOD"). Defendant Jack Amon is BOD president, and defendant Kenny Nelson is a member of the Board. Defendant Garland Murray is a member of the BOD-appointed Architectural Control Committee, but is not on the BOD. His son, Joe Murray, is the subject of much of plaintiff's complaint, but has no formal relation to NHOA, and as explained above, is no longer part of this lawsuit.

The thrust of Cantu's complaint is that Garland and Joe Murray "have been acting as tormentors and discriminators [sic]" against Cantu "with the full knowledge and approval" of the other individual defendants and NHOA, compl. at ¶ 20, resulting in two discriminatory acts in particular.

First, NHOA denied Cantu's request to drill a well on his property based upon a deed restriction specifically prohibiting drilling wells. Cantu testified that NHOA generally ignored violations of deed restrictions, implying that NHOA was selectively enforcing the restriction against him. Cantu testified that his lawyer (the same lawyer representing him on this appeal) advised him that state law permitted him to drill a well, notwithstanding the deed restriction. Cantu drilled a well April 11, 2001 , and he testified at his deposition September 17, 2001 that he was still using the well.

Second, Cantu alleges that NHOA attempted to overcharge him for maintenance fees on Nocona Hills lots he had recently purchased. NHOA initially asserted that Cantu owed maintenance fees

3

dating back to when the sale was negotiated; Cantu asserted that he did not begin to owe fees until the deed was actually conveyed. NHOA eventually decided the dispute *in Cantu's favor*, and he never paid the extra fees.

The connection between these incidents and race discrimination is difficult to discern from the record, but it appears to spring from the following alleged anecdotes in the complaint. First, in an April 1999 NHOA meeting Garland Murray referred to Cantu as "that sorry Mexican" and "that goddamn Mexican son of a bitch." Compl. at ¶ 21. The meeting's agenda did not involve Cantu, and he was not present. Second, one year later in April 2000, Joe Murray (again, no longer part of the lawsuit) appeared uninvited outside Cantu's house and made obscene gestures. Compl. at ¶ 24. Third, in September 2000, Joe Murray "made threatening remarks" to Cantu outside a supermarket. Compl. at ¶ 26. Finally, defendants called a meeting on October 2, 2000 in which the "main purpose was to attempt to embarrass and humiliate" Cantu. Compl. at ¶ 30. However, Cantu testified at his deposition that it was at that meeting that NHOA voted that Cantu need not pay the disputed maintenance fees.

### III. Analysis

A.   Cantu waived his only issue on appeal

Addressing the merits of this appeal is extremely difficult because Cantu's brief is so poor.  The "Argument" portion of the brief is in a large, double-spaced typeface, yet does not fill a

4

single page. The argument makes no mention of any of the facts of the case, and cites to only one case, one from the Southern District of New York. Cantu's four-sentence argument does not even address any of the points raised in the District Court's opinion. The argument is nothing but a bald assertion that the District Court erred. The Federal Rules of Appellate Procedure require that appellants put forth their "contentions *and the reasons for them*." *See* FED. R. APP. P. 28(a)(9)(A) (emphasis added). Cantu has not put forth any reasons why the appeal should be decided in his favor.

A party waives an issue if he fails to adequately brief it. *See L&A Contracting v. Southern Concrete Services*, 17 F.3d 106, 113 (5th Cir. 1994) (refusing to review an issue where a party "cit[ed] no authority in its one-page argument"). Cantu waived his argument.

B.    Summary judgement was appropriate

We note that having his only argument waived does little actual harm to Cantu's lawsuit because the District Court correctly found that it was without merit.

We review the district court's summary judgment determination *de novo*, applying the same standard as the District Court. *See Boston Old Colony Ins. v. Tiner Associates Inc.*, 288 F.3d 222, 227 (5th Cir. 2002). Summary judgement is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). We must view all evidence and all factual inferences in the

light most favorable to Cantu, the party opposing the motion. *Id*. If the party opposing the motion is unable to prove that there is at least a genuine issue of fact with respect to a material fact which he would have to prove at trial to prevail, the motion must be granted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Cantu has plainly failed to make a sufficient showing  on either his § 1981 or § 1982 claim.

Section 1981 provides that "[a]ll persons... shall have the same right... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981. To prevail under § 1981, Cantu must establish three elements: (1) that he is a member of a racial minority; (2) that defendant had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute: in this case, apparently, Cantu's rights to enjoy the benefits of his contractual relationship with NHOA. *See Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001). Cantu only satisfies the first of the three requirements.

The District Court correctly found that Cantu failed to put forth any evidence of intentional racial discrimination. Although defendant Garland Murray allegedly made racially-charged remarks against Cantu in 1999, such "stray" remarks must be proximate in

6

time and related to the adverse action to constitute an inference of discrimination sufficient to survive summary judgment. *See Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 400-01 (5th Cir. 2000) (upholding summary judgment against Title VII plaintiff where stray racist remarks had no connection to adverse employment decision). Murray's alleged comments were entirely unrelated to the well-drilling and maintenance fee disputes, and Murray had no authority to make decisions for NHOA.

In any case, Cantu testified that he has already drilled a well without NHOA approval and that he prevailed in the maintenance fee dispute. We are hard-pressed to find any violation of Cantu's contractual relationship rights.

Section 1982 provides that "[a]ll citizens of the United States shall have the same right... as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property." 42 U.S.C. § 1982. To prevail under this section, a plaintiff must prove that a defendant *intentionally* discriminated against him, *see Hanson v. Veterans Admin.*, 800 F.2d 1381, 86 (5th Cir. 1986), and as explained above, plaintiff has failed to put forth any evidence suggesting intentional racial discrimination.

Furthermore, § 1982 has long been interpreted to apply only to denials of housing because of race, not to discrimination in housing conditions. See Jones v. Alfred H. Mayer Co., 392 U.S. 409,

413 (1968) ("Whatever else it may be, 42 U.S.C. § 1982 is not a comprehensive open housing law.... It does not deal specifically with discrimination in the provision of services or facilities in connection with the sale or rental of a dwelling."). As the District Court correctly held, Cantu is not entitled to relief under this section as a matter of law.

C.   Sanctions

Because Cantu's only issue on appeal is one which was so poorly briefed as to be waived, Cantu has brought a frivolous appeal. This court has the authority to award "just damages" and "single or double costs" under both Federal Rule of Appellate Procedure 38 and 28 U.S.C. § 1912.[1] Appellees have not asked for sanctions or to be reimbursed, but we may award costs and sanctions *sua sponte. See Foret v. Southern Farm Bureau Life Ins.*, 918 F.2d 534, 539 (5th Cir. 1990). We do so now, finding guidance in the following cases.

In *Carmon v. Lubrizol Corp.* this court imposed double costs against appellants who "filed nothing more than a five-page 'slap-

---

[1] Rule 38 provides: "If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." FED. R. APP. P. 38. Section 1912 provides: "Where a judgment is affirmed by the Supreme Court or a court of appeals, the court in its discretion may adjudge to the prevailing party just damages for his delay, and single or double costs." 28 U.S.C. § 1912. Under the statute, there appears to be no requirement that the appeal be deemed frivolous, nor a requirement that the appellant be given notice and reasonable opportunity to respond.

dash' excuse for a brief-- a brief that fail[ed] to raise even one colorable challenge to the district court's judgment." 17 F.3d 791, 795 (5th Cir. 1994). The court noted that "[h]ad counsel spent any real time studying the record and the opinion, he would... have discerned that his appellate argument was inapposite." *Id*; *see also Pillsbury Co. v. Midland Enterprises, Inc.*, 904 F.2d 317, 318 (5th Cir. 1990) (imposing sanctions where the result of the appeal "is obvious from the comprehensive and decisive exposition of the law by the judge below.").

In *McGoldrick Oil Co. v. Cambell, Athey & Zukowski*, this court imposed double costs and sanctions of $1000 against appellant and $2000 against his lawyer for filing a brief that was "singularly of little aid to [the] decision-making process." 793 F.2d 649, 653 (5th Cir. 1986). Four of the six issues briefed relied on a misapprehension about the district court opinion; the fifth issue was not properly before the court; and the final issue was briefed "without any reference to any supportive evidence in the record, contrary to FED R. APP. P. 28(a)(3) & (e)." *Id*.

Cantu's brief is worthy of all the derisive descriptions above, and the decision to file such a brief is especially egregious because the District Court specifically admonished Cantu's lawyer in this regard: "The Court takes this opportunity to point out that the Complaint is not of the quality or clarity that is typically expected of reasonably skilled attorneys. In the

future, Cantu's counsel should take more care in drafting documents to be filed with the courts." Mem. Op. and Order, *Cantu v. Nocona Hills Owners Ass'n*, No. 7:00-CV-220-R, at n.1 (N.D. Tex July 30, 2001). Despite a warning from the District Court that the complaint was below par, the "Statement of Facts" section of Cantu's appellate brief asserts that the complaint "very adequately states... the relevant facts," and so as not to "belabor or repeat" the facts, the brief merely incorporates the complaint by reference as his only source for the facts. There is no attempt to summarize the relevant facts from, nor is there a mention of, Cantu's six-hour deposition, nor any other discovery item.

Frivolous appeals "needlessly put appellees to the expense of defending their judgment" and "unjustifiably consume[] the limited resources of the judicial system." *Pillsbury*, 904 F.2d at 318. Also, "[w]hile judges, staff and support personnel have expended energy to dispose of this meritless appeal, justice has been delayed for truly deserving litigants." *Foret*, 918 F.2d at 539.

In 1994 Rule 38 was amended to require "notice from the court and reasonable opportunity to respond" before awarding costs or damages. Cantu and his lawyer are advised that we believe an award of double costs, assessed jointly and severally against Cantu and his lawyer, and damages of $1000 against Cantu's lawyer, is appropriate. They will have 30 days to explain to the court why this appeal is not frivolous, or why this assessment is not

10

appropriate.

AFFIRMED.