United States Court of Appeals
Fifth Circuit

**F I L E D**

January 13, 2006

Charles R. Fulbruge III
Clerk

Revised January 19, 2006

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 05-60521
Summary Calendar

———————

WILLIAM C. STEARMAN, III,

Plaintiff-Appellant,

VERSUS

COMMISSIONER OF INTERNAL REVENUE,

Defendant-Appellee.

———————

Appeal from a Decision
of the United States Tax Court

———————

Before SMITH, GARZA and PRADO,
Circuit Judges.

PER CURIAM:

William Stearman, III, *pro se*, appeals the judgment of the United States Tax Court dismissing his two consolidated cases for failure to state a claim and failure to prosecute and sanctioning him $12,500 per case under 26 U.S.C. § 6673 for advancing frivolous positions and maintaining the proceedings primarily for delay.[1]   Stearman also requests damag

———————

[1] On the certificate of service in his appellate brief, Stearman styles himself as a "moron *pro se* from hickville Texas" and urges this court to decide whether he "knows more about the tax sys-
(continued...)

es under § 6673 against the Tax Court judge and opposing counsel in an amount "at least equal to the amount of the 'judgment.'" We affirm and grant the Commissioner's motion to impose sanctions for maintaining a frivolous appeal.

## I.

We review *de novo* the dismissal for failure to state a claim, *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 246 (5th Cir. 1997), and review for abuse of discretion the dismissals for failure to prosecute and the imposition of sanctions under § 6673, *Tello v. Comm'r*, 410 F.3d 743, 744 (5th Cir.), *cert. denied*, 126 S. Ct. 381 (2005). Dismissals with prejudice for failure to prosecute are proper only where (1) there is a clear record of delay or contumacious conduct by the plaintiff and (2) the district court has expressly determined that lesser sanctions would not prompt diligent prosecution, or the record shows that the district court employed lesser sanctions that proved to be futile. *Tello*, 410 F.3d at 744.

In most cases, a plain record of delay or contumacious conduct is found if one of the three aggravating factors is also present: (1) delay caused by the plaintiff; (2) actual prejudice to the defendant; or (3) delay as a result of intentional conduct. *Id.* In *Tello*, we found that the Tax Court had properly dismissed the case because of the plaintiff's (1) failure to appear at the calendar call and recall of his case; (2) failure to cooperate with the Commissioner in preparing a stipulation of facts; (3) refusal to address the merits of the case; (4) wilful ignorance of warnings to stop making frivolous arguments; and (5) wasting

the time and resources of the Tax Court. *Id.*

Stearman, like the plaintiff in *Tello*, failed to appear at the call of the consolidated cases despite being sent a notice setting the case for trial and stating that "[HIS] FAILURE TO APPEAR MAY RESULT IN DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST [HIM]." Stearman did not explain his non-appearance.

Also, like the plaintiff in *Tello*, Stearman failed to cooperate in that he refused to comply with the Tax Court's order to file, with that court, his requests for admissions. The notice setting the case for trial stated that "[HIS] FAILURE TO COOPERATE MAY ALSO RESULT IN THE DISMISSAL OF THE CASE AND ENTRY OF DECISION AGAINST [HIM]." Stearman served a request for admissions on the government without filing it with the Tax Court. The request asked the government to admit that "'Taxpayer' means fiduciary," that the "'United States' is a federal corporation," and that the "'UNITED STATES OF AMERICA' is another federal corporation." The Tax Court ordered Stearman to file the request with the court, as required by Tax Court Rule 90(b).

Instead of cooperating by complying with the order, Stearman filed a "status report" asking "YOU WANT WHAT? BY WHEN? If you haven't figured this out yet, the olive branch has been withdrawn" and stating "Vasquez,[2] you've lost your mind! Go butt a stump!![3] The "status report" also called the

---

[1](...continued)
tem" than do the Commissioner's "educated" and "vastly experienced" attorneys.

[2] Judge Vasquez is the Tax Court judge presiding over the case.

[3] Earlier, after the Commissioner had filed an
(continued...)

Tax Court a "kangaroo court" and stated that taxpayer "has absolutely no intention of 're-turning' or 'refiling' those original discovery documents . . . given that those documents are now evidence for the pending criminal investigation of what may involve a whole stinking group of you people."[4] Stearman explained that he would not "refile" the requests of admission with the Tax Court because the "insane tampering with the Record epidemic that runs amuck in the Tax Court is not Petitioner's problem."

Further, in retort to the Commissioner's motion to dismiss for failure to state a claim, Stearman filed a response, also including an "Anticipatory Rule 60(b) Motion," which did not address the merits of the motion to dismiss but asserted that the Tax Court judge "is incompetent and biased and has no authority,

whatsoever," and that the judge had not allowed sufficient time to respond to the motion to dismiss.[5] The response stated that the Tax Court's order to respond was "completely unlawful and mindless" and characterized the motion to dismiss as "utterly and facially sanctionable crap."[6]

It is evident that Stearman engaged in a pattern of delay and contumacious conduct before the Tax Court and that the delay was caused by his personal and intentional conduct. He expressly refused to file items required by the court's rules and an explicit court order,

---

[3](...continued) answer in No. 20928-03, Stearman also filed a "status report" stating that "[u]pon receipt of the Answer, Petitioner respectfully declines to animate the person, capacity or usage proposed by Respondent, and he is content to await notice of any sua sponte activity relevant to this matter."

[4] The day before he filed the status report, Stearman filed a "Probable Cause Affidavit" with the Tax Court that alleged various criminal acts committed by the court, objected to Tax Court rules, requested "production" of Judge Vasquez, and submitted "interrogatories" directed to the judge.

The affidavit and several other documents filed by Stearman in the Tax Court contained the following heading: "UNITED STATES TAX COURT (a federal corporation, committing criminal acts under disguise of providing professionally incompetent arbitration services, while doing business in 'this state' via a tax exemption certificate."

---

[5] The motion to dismiss was filed on November 2, 2004. On November 18, 2004, the Tax Court ordered Stearman to file, by November 29, 2004, a response to the motion to dismiss and set the motion for a hearing at the previously-scheduled trial session set for December 6, 2004. Stearman argued that he received this order on November 22, 2004, and because of the Thanksgiving holiday he had only "two days" to respond. Stearman, however, was served with the motion to dismiss filed on November 2, 2004. Therefore, he had at least three weeks to prepare a response by November 29, 2004. Further, had he filed for an extension, rather than filing a response insulting the presiding judge, the extension could have been granted.

[6] The response contended that the government could not file a motion to dismiss for failure to state a claim nine months after it filed a responsive pleading because, under Federal Rule of Civil Procedure 12(b), such a motion must be made "before pleading if a further pleading is permitted." This argument lacks merit. As explained in Federal Rule of Civil Procedure 12(h), which deals specifically with waiver or preservation of certain defenses, a defense for failure to state a claim "may be made in any pleading permitted or ordered under [Federal Rule of Civil Procedure] 7(a), or by motion for judgment on the pleadings, or at the trial on the merits."

although he had been warned that the sanction for failure to cooperate could be dismissal.

Stearman also failed to appear at trial although he had been warned that the sanction for this action could also be dismissal. In his response to the motion to dismiss, he refused to address the merits of the motion, but rather insulted the judge. His insults to the judge, opposing counsel, and the Tax Court, and his general contempt and defiance of the court's authority and accusations of criminal conduct are intentional, not mistakes or oversights. As we explained in *John v. Louisiana*, 828 F.2d 1129, 1131 (5th Cir. 1987), it is not a party's negligence, regardless of how careless or inconsiderate, that makes conduct contumacious; instead, it is "the stubborn resistance to authority" that justifies a dismissal with prejudice.

Moreover, Stearman's frivolous arguments, insults, failure to cooperate and other dilatory practices wasted the Tax Court's resources. Because Stearman was *pro se*, he was also personally responsible for the delay.

Given the obstinate and harassing nature of Stearman's conduct, including his wilful failure to cooperate and to appear at trial despite the judge's explicit warnings, it is apparent from the record that lesser sanctions were futile.[7] Therefore, the dismissal for failure to prosecute is proper under *Tello*, 410 F.3d at 744.[8]

We also affirm the dismissal for failure to state a claim. Whatever arguments Stearman may have on appeal on why dismissal for failure to state a claim was improper are waived because he did not raise them in his invective-filled response to the motion to dismiss.[9]

We also agree with the Tax Court that Stearman "has advanced shopworn arguments characteristic of tax-protester rhetoric that has been universally rejected by this and other courts." T.C. Memo 2005-39. Stearman appears to have borrowed his theories and litigating strategy from the taxpayer in *Tello v. Comm'r*, 143 Fed. Appx. 568 (5th Cir.) (per curiam), *cert. denied*, 126 S. Ct. 667 (2005).

As with Stearman, the plaintiff in *Tello* did not deny receiving the income stated in the notice of deficiency or the fact that he did not file a tax return for the years at issue. Also as here, Tello alleged that the notice of deficiency was improper because (1) the accounting method the Commissioner employed was not as suitable as Tello's preferred accounting method; (2) the Commissioner is not permitted to provide accounting services in the State of Texas; (3) the Commissioner is not permitted to practice law in the State of Texas; and (4) the taxpayer has no "fiduciary obligation" to

---

[7] *See Rogers v. Kroger Co.*, 669 F.2d 317, 323 (5th Cir. 1982) (noting that lesser sanctions include, among others, explicit warnings).

[8] *See also* TAX COURT R. 123(b) ("For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for

(continued...)

---

[8](...continued)
other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner.").

[9] *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1993) (en banc) (per curiam) (explaining that court of appeals will not consider evidence or arguments that were not raised in district court).

pay taxes to the Internal Revenue Service.[10] *Id.* In *Tello*, we affirmed the Tax Court's dismissal for failure to state a claim, labeling the claims as "patently frivolous."[11] For the same

reasons, we affirm here.

Furthermore, the Tax Court did not abuse its discretion in sanctioning Stearman $12,500 per case under § 6673(a), which allows sanctions where a taxpayer institutes or maintains a proceeding primarily for delay or his position in the proceeding is frivolous or groundless. As discussed above, Stearman failed properly to prosecute his case, which indicates that he maintained the proceedings primarily for delay, and his position in the proceeding was utterly frivolous.

## II.

The Commissioner moves in this court to sanction Stearman $6,000 for maintaining a frivolous appeal so that the government can be compensated for the cost of defending this appeal. Stearman has not responded to the motion; his main arguments on appeal are the same frivolous ones he advanced in the Tax Court.

As we recently cautioned in *Tello*, 410 F.3d at 745, a party who continues to advance long-defunct arguments invites sanctions.[12] Sanctions on *pro se* litigants are appropriate if

---

[10] Although, on appeal and in various filings with which he inundated the Tax Court, Stearman also challenged the constitutionality of various Tax Court rules and asserted violations of due process and equal protection by Judge Vasquez, Stearman's complaint makes only the four claims discussed above.

[11] In *Tello*, 143 Fed. Appx. at 569-70, the court held as follows:

It is clear that Tello's petition was the proper subject of a dismissal for failure to state a claim. Petitions in the Tax Court are governed by TAX CT. R. 34(b)(4), which states that a petition must contain: "Clear and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency or liability . . . . Any issue not raised in the assignments of error shall be deemed to be conceded." The assignments of error Tello made in his petition for redetermination were patently frivolous. The heart of Tello's argument in the Tax Court was that the CIR has no authority to collect tax revenue. It is manifest that the CIR and the IRS have the authority to collect tax revenue by virtue of the Internal Revenue Code. *See* I.R.C. §§ 7801-7804 (2000). Thus, his primary assignment of error was plainly without merit. Furthermore, it is evident that by virtue of promulgating official tax documents, the CIR has not engaged in the unauthorized practice of accounting or law. We have previously upheld the Tax Court's dismissal of petitions for redetermination under Rule 34(b)(5) for failure "to allege any justiciable error in the determinations upon which the notice of deficiency was based or any facts tending to support any such error." *Sochia v.* (continued...)

[11](...continued)
*Comm'r*, 23 F.3d 941, 943 (5th Cir. 1994). Accordingly, we affirm the Tax Court's dismissal of Tello's petition for redetermination.

(Ellipses in original.)

[12] *See also Parker v. Comm'r*, 117 F.3d 785, 787 (5th Cir. 1997) (noting that despite the warning "that their claims were meritless, the Parkers filed the present appeal in which they continued to maintain that the entire Tax Code is an elaborate 'fraud' designed to 'catch the naive'"); *Coghlan v. Starkey*, 852 F.2d 806 (5th Cir. 1988) (per curiam).

5

they were warned, as Stearman was, that their claims are frivolous and if they were aware of "ample legal authority holding squarely against them." *Stelly v. Comm'r,* 761 F.2d 1113, 1116 (5th Cir. 1985) (per curiam) ("Although a court can demand a higher degree of responsibility from members of the bar, litigants cannot be treated as free to advance frivolous claims merely because they appear without counsel."). Because Stearman explicitly questions the wisdom of the *Tello* cases in his brief, he must have been aware that the *Tello* cases rejected the theories that he advanced as patently frivolous.[13] We accordingly grant the motion for sanctions of $6,000 for pursuing a frivolous appeal pursuant to 26 U.S.C. § 7482(c)(4), 28 U.S.C. § 1912, and Federal Rule of Appellate Procedure 38.[14]

Moreover, because the sanctions imposed by the Tax Court (cumulatively $25,000) did not deter Stearman from pursuing the same frivolous arguments on appeal, we impose *sua sponte* an additional sanction of $6,000. *See* 28 U.S.C. § 1912; FED. R. APP. P. 38. As pointed out in *Coghlan*, 852 F.2d at 808 & n.1, "there is no question that the courts of appeals have the ability to impose sanctions *sua sponte*." As we warned in *Stelly,* 761 F.2d at 1115-16, sanctions greater than reasonable attorney's fees and double costs may "be imposed under appropriate circumstances." In *Stoecklin v. Comm'r*, 865 F.2d 1221 (11th Cir.

1989), for example, the court doubled *sua sponte* the amount of lump-sum appellate sanctions requested by the Commissioner because the circumstances indicated that higher damages were appropriate.[15]

The extraordinary circumstances of this case indicate that greater sanctions are called for. Stearman knew that this court had dismissed similar arguments as frivolous in the *Tello* cases, as shown by Stearman's offensive insinuations with respect to this court's alleged lack of preparation in those cases.[16] He was also warned by the Tax Court that his arguments are frivolous. Yet on appeal, rather than explaining why the Tax Court committed error, Stearman restated the myriad of claims with which he inundated the Tax Court and added insults to the address of the Tax

---

[13] *See infra* note 16.

[14] *See Tello*, 410 F.3d at 745 (awarding the same amount in a case where petitioner advanced similar arguments); *Parker*, 117 F.3d at 787 (approving the practice of imposing a lump sum sanction in lieu of costs because it "saves the government the additional cost of calculating its expenses, and also saves the court the time and expense of reviewing the submission of costs").

---

[15] *See also Billman v. Comm'r*, 847 F.2d 887 (D.C. Cir. 1988) (finding that the tax protester's reassertion of the very claims for which he was previously sanctioned warranted doubling of earlier sanction).

[16] In his appellate brief, Stearman appears to insinuate that this court is incompetent:

It's difficult to figure how this court could both (A) know the legal reality of the "federal income tax system" and (B) press these matters to the extent this court have [sic] pressed them. Upon review of this court's decisions in the Tello cases, it's very clear that a review of the "naked case" is necessary.

Similarly, Stearman also insinuates that this court has not afforded tax litigants adequate consideration: "There is no amount of sanctions or penalties that will ever change the law or make up for this court's well-demonstrated disinclination to study these matters."

Court,[17] and, as discussed above, of this court. Stearman's contempt for the judicial system further demonstrates that he did not institute the proceedings in good faith, but merely to harass the collection of public revenues.

The $12,000 in sanctions is modest compared to the amount of unpaid taxes Stearman owes for 1999, 2000 and 2001, which exceeds $280,000. Although Stearman styles himself as a "moron *pro se* from hickville Texas," his annual income for 1999, 2000 and 2001 suggests that he may not be as unsophisticated as he pretends and that his *pro se* status relates to an unwillingness, not an inability, to secure an attorney.

Even if we were to assume that Stearman is unsophisticated, what distinguishes this case from other tax protester cases in which we imposed lesser sanctions is that Stearman insulted this court, the Tax Court, and the opposing party. Even a *pro se* petitioner is required to be respectful in judicial proceedings. Thus, it is difficult to imagine a lesser sanction that would vindicate the integrity of the court proceedings and deter Stearman from similar misconduct.[18] Wasteful and dilatory appeals

unjustifiably consume the limited resources of the judicial system: "While judges, staff and support personnel have expended energy to dispose of this meritless appeal, justice has been delayed for truly deserving litigants." *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 539 (5th Cir. 1990).

Other circuits have also long recognized the waste of judicial resources occasioned by such groundless tax protester appeals:

---

[17] Stearman argued in his appellate brief that the Tax Court is a "kangaroo court the likes of which are rather difficult to match." He also states that "Vasquez is completely in the dark regarding the legal mechanics of the 'federal income tax system.' That may go a long way to explain his maniacal conduct in this matter. Either way, a real judge doesn't do what Vasquez does."

[18] Rule 38 of the Federal Rules of Appellate Procedure provides that a court of appeals may award "just damages" and single or double costs for frivolous appeals. Rule 38 does not specify whether attorney's fees that may be awarded are
(continued...)

---

[18](...continued)
part of "just damages," or single or double "costs." Generally, statutes allowing sanctions either "define attorney's fees as an element of costs" or "separate fees from other taxable costs." *Hutto v. Finney*, 437 U.S. 678, 697 n. 28 (1978) (comparing 42 U.S.C. § 2000a-3(b) with 29 U.S.C. § 216(b) (1970 ed., Supp. V)). Section 2000a-3(b) is in the former category because it provides, in pertinent part, that the court in its discretion "may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." In contrast, § 216(b) states that the court shall "allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."

Unlike § 216(b), rule 38 does not define attorney's fees as an element separate from costs. Therefore, if attorney's fees are an element of costs, double costs may include double attorney's fees. Additionally, "just damages" that would vindicate the integrity of the judicial proceeding and deter Stearman from future misconduct could include double attorney's fees. Here, the Commissioner argued in his motion for sanctions that the average expense in attorney salaries and other costs that it incurred in defending frivolous taxpayer appeals in which sanctions were awarded during 2001 and 2002 was approximately $6,900. Thus, $12,000 is not more than double attorney's fees and other costs, that is, not more than "double costs" and "just damages."

> The doors of this courthouse are of course open to good faith appeals . . . . But we can no longer tolerate abuse of the judicial review process by irresponsible taxpayers who press stale and frivolous arguments, without hope of success on the merits, in order to delay or harass the collection of public revenues or for other nonworthy purposes.

*Granzow v. Comm'r*, 739 F.2d 265, 270 (7th Cir. 1984). The court in *Granzow* also warned that it will not hesitate to impose even greater sanctions for frivolous tax protester appeals under appropriate circumstances. *Id.*

We therefore AFFIRM the decision of the Tax Court, including the $25,000 in sanctions, and impose $12,000 in sanctions on Stearman for pursuing a frivolous appeal.