## BRODERICK v. TAYLOR.

No. 4987.

Court of Appeal of Louisiana. Second Circuit.

June 4, 1935.

John R. Hunter & Son, of Alexandria, for appellant.

K. Hundley, of Alexandria, for appellee.

TALIAFERRO, Judge.

Plaintiff and defendant, on May 11, 1931, entered into the following contract, viz.:

"Contract and agreement between P. C. Taylor and Alexandria Marble & Granite Works (known as first party) and Leo F. Broderick (known as 2nd party).

"That said L. F. Broderick is to work as Salesman and the promotion of P. C. Taylor or Alexandria Marble & Granite Works and that L. F. Broderick is to receive as compensation for his work 25% on every Dollar's sale, and is granted privilege of drawing $25.00 per week drawing account, and draw weekly expense of oil, gas and board bill, etc.

"In the matter of buying car it is understood that L. F. Broderick is to buy Chevrolet coupe to cost between $663.00 and $702.00, and his old car to go as part payment from $160.00 to $173.00, and P. C. Taylor to pay cash about $129.00, and to furnish L. F. Broderick with enough money monthly to meet payment as long as said Broderick is under employment with P. C. Taylor.

"In case Mr. Broderick severs his connection with P. C. Taylor in 6 months from this date or sooner, the balance payments on car is to be assumed by P. C. Taylor, and car is to be turned over to P. C. Taylor, and said P. C. Taylor to pay Broderick $100.00 for his part in car, and in case Mr. Brod-

erick continues to work for P. C. Taylor for 12 months or more that car will be the property of L. F. Broderick, etc.

"[Signed]   P. C. Taylor
"[Signed]   L. F. Broderick.
"This 11th day of May 1931."

Both sides observed and performed the obligations of the agreement until September 19, 1931, when, on account of a disagreement between them, it was abandoned.

Plaintiff brought this suit to recover judgment for $605.06, alleged to be due him, for the following reasons:

1. That sales effected by him amounted to $3,504.25, on which he was entitled to a commission of 25 per cent., or $876.06, against which defendant had advanced him $25 per week for 23 weeks, or a total of $575, leaving a balance due him on this account of $301.06.

2. That he purchased a new car, in keeping with the contract and to perform his obligations thereunder, on which there is due a balance of $304 for which plaintiff was responsible.

Defendant denies that he is due plaintiff any amount whatever, but, on the contrary, avers that defendant is indebted to him to the extent of several hundred dollars for advances to him in excess of accrued commissions arising from his labors under the contract. He further avers:

"* * * That instead of making the sales shown by the statement attached to and made a part of plaintiff's petition, he only made the sales in accordance with the statement attached to and made a part of this answer: that in accordance with the custom prevailing among all dealers in marble and granite as defendant is, and was and is well known to plaintiff, a sale is not made until the order has been delivered, set up and collected for; therefore, as only a comparatively small portion of the alleged sales made by plaintiff were bona fide sales, and as only a portion thereof were actually delivered, set up and collected for by plaintiff, he is entitled to only such sales as were actually sold, delivered, set up and collected for as shown by the statement hereto attached."

He additionally avers that of the orders taken and submitted by plaintiff, he is entitled to a commission on only $2,131.25, or the sum of $532.82, whereas he admits he has actually received $575 on a weekly advance basis; that of the orders submitted by plaintiff, $638 have been canceled, $503

have been refused, and that orders to the amount of $304 had not been delivered; and that he is not entitled to any commission on said amounts. He also avers that he advanced to plaintiff money for expenses while working under said contract, totaling $1,098.25, which is chargeable against the commissions accruing to him; that as relates to the price of the automobile, he paid all installments due thereon as long as plaintiff worked for him, and as he operated under the contract less than six months, respondent was entitled to have the car delivered to him on payment to plaintiff of the $100 stipulated in the contract, but as he elected to retain possession of the car, he alone is obligated to discharge the balance due on its price.

The demands of plaintiff were rejected and his suit dismissed, with the right reserved to him to sue defendant hereafter for commissions that may be due him under orders submitted by him which may be filled after the suit was filed. He appealed.

■ Defendant's position relative to the balance due on price of the automobile is eminently correct. He was entitled to the possession of the car as owner upon paying plaintiff $100. Plaintiff having worked for defendant less than six months and having elected to keep the car, and, apparently, defendant not desiring to enforce his rights thereto under the contract, it is obvious that defendant is not further responsible for payment of the balance due on the car's price.

■ The measure of defendant's responsibility to plaintiff under the contract quoted above lies in a correct interpretation of the following stipulation in the first paragraph thereof, viz.:

"L. F. Broderick is to receive as compensation for his work 25% on every dollar's *sale*, and is granted privilege of drawing $25.00 per week drawing account, and draw weekly expense of oil, gas and board bill, etc."

Plaintiff contends that his commission attached on each order immediately upon securing same, while defendant's position is that no commission accrued until the order was accepted by him, the stones made, delivered, erected, and collected for.

Plaintiff's position is not only untenable, but unreasonable. If he is correct, then defendant was entirely at his mercy. All that plaintiff would have to do to earn the liberal commission stipulated in the contract was to secure orders, regardless of the financial responsibility of the customer, transmit them to defendant, and the commission was earned. Defendant certainly had the right to reject any order. No *sale* could be effected until he had approved the orders and had delivered and erected the stones. The orders plaintiff secured were merely propositions to defendant to purchase. They were in no sense final. Defendant's position is supported by his own evidence and that of another person for many years engaged in the same sort of business. It was the custom of the trade that commissions did not accrue to the solicitor until the orders taken by him had been accepted and the goods, covered thereby made, delivered and collected for. Even without this testimony, the case is with defendant.

■ Plaintiff also contends that the amount he was privileged to draw weekly to cover "expense of oil, gas and board bill, etc.," was not chargeable to him at all, but was a supplement to his compensation, in addition to the 25 per cent. commission on sales. Defendant charged him with the amount of these weekly "expenses," and, we think, properly so. The contract plainly states that plaintiff had the privilege of drawing $25 weekly against his compensation, and in same breath, in effect, says he may likewise draw weekly the amount of his ordinary and usual expenses incurred in the pursuit of his labors under the contract. It would be a most unusual stipulation in a contract of this character to agree to pay, without limitation, the operating expenses of a salesman who was contacting different parts of the country and absent a goodly part of the time. The salesman would have the right, under such agreement, to stop at the most expensive hotels and incur incidental expenses wholly out of line with the character of the business he was engaged to do. A covenant of this character should be expressed in language of the clearest sort before receiving judicial sanction. In the present case, the language of the contract is more than fairly clear that the parties did not intend as plaintiff would have us believe.

We think the judgment appealed from correct, and it is hereby affirmed.