304 So.2d 728 (1974)
Carrie Dixon TAYLOR
v.
Dr. William A. CLARK, III.
No. 6530.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1974.
Bernette Joshua Johnson, New Orleans, for plaintiff-appellant.
Maurice L. Burk, New Orleans, for defendant-appellee.
Before SAMUEL, SCHOTT and MORIAL, JJ.
SAMUEL, Judge.
Plaintiff instituted this suit under R.S. 23:631 and 23:632 on an oral contract for domestic services against her former employer, William A. Clark, III. She claims the sum of $135 in unpaid wages based upon an hourly rate of $2 for housework and an hourly rate of $1 for baby-sitting services, penalties in the sum of $2,160, and reasonable attorney's fees. Defendant answered, denying any liability and averring the agreement was based upon a daily rate of $10 plus carfare, plus $1 per hour for baby-sitting services, and that all monies due had been paid. Following trial on the merits, judgment was rendered in favor of the defendant dismissing plaintiff's suit. Plaintiff has appealed.
Plaintiff's employment resulted from an ad which she placed in a local daily newspaper from November 12 through November 18, 1971 offering her services as a domestic for four hours per day at $2 per hour. She was contacted by the defendant's wife and went to work at defendant's home on a temporary basis while their full-time maid was receiving medical treatment. Conflicting testimony relative to the agreement or agreements was given by plaintiff and by the defendant and his wife.
*729 Defendant and his wife testified: Plaintiff first worked in their home on a trial basis in the latter part of November or early December, 1971 for four hours per day at $2 per hour. The arrangement proved unsatisfactory because plaintiff was not accomplishing the required work in four hours and the defendant was dissatisfied with the salary paid for the short period of time. After two or three days they discussed the matter with each other and decided to offer plaintiff the same arrangement as their regular maid, $10 per day plus carfare. Thereafter Mrs. Clark talked to plaintiff who agreed to the new arrangement. She returned to work for the Clarks on December 23, 1971 on the new basis when their regular maid left for a medical "checkup", working for about a week from 10 a. m. to 6 p. m. each day. During this time she was paid $10 plus carfare when she was taken to the bus stop at the end of each day, which payments were accepted without complaint. According to Mrs. Clark, plaintiff stayed overnight December 30 through January 1 for plaintiff's own convenience as she had a long distance to travel by bus. On New Year's Eve Dr. and Mrs. Clark attended a party from 9 p. m. to 1 a. m. At that time they offered to take plaintiff home but she preferred to remain overnight. The Clarks were at home during all of each of the other evenings. When Dr. Clark took plaintiff to the bus stop on her last day of work, January 2, 1972, he paid her $45 for the 4 days including baby-sitting. The following week plaintiff returned to defendant's home claiming she had not been paid for baby-sitting. She asked no set amount but the doctor gave her $10 or $15 additional and she left.
Plaintiff testified: Mrs. Clark contacted her while her ad was running in the newspaper but she did not go to work for the Clarks until December 23. She worked twelve hours daily doing cooking and housework and baby-sat twelve hours (all night) on December 30, 31 and January 1. She never agreed to work for less than $2 per hour except for baby-sitting but she was paid only $10 plus carfare at the end of each day. She made no complaint at any time during the period of her employment. When Dr. Clark took her to the bus stop on the last day she worked, he gave her the money folded up and she did not realize until she got home and counted the money that she had received nothing for baby-sitting. She returned the following week and asked for $5 additional. She was paid the money and left.
In this court plaintiff contends that, taking advantage of her lack of education, the defendant underpaid her in the amount of $135 and therefore, under the provisions of R.S. 23:631 and 23:632,[1] she is entitled to penalties of $24 per day for a period of 90 days plus penalties and attorney's fees.
*730 The record does not reflect that defendant attempted to take advantage of plaintiff, nor does it reflect she worked twelve hours per day. It is quite clear that plaintiff did work substantially more than the 4 hours per day as outlined in her ad and that indicates there must have been another agreement between the parties. The fact that plaintiff made no complaints at any time during the period of her employment, particularly when she was paid daily at the daily rate (the same rate he had been paying the regular maid and less than half of the amount she now claims was due each day), lends credence to defendant's version of the employment agreement.
According to her own testimony, the only complaint or demand made to or on the defendant was that she was owed an additional $5 for baby-sitting and when she returned the following week to request the $5, she was paid immediately. Although her petition alleges she was entitled to baby-sitting fees of $1 per hour for twelve hours for each of the three nights she slept at the defendant's home, she admitted staying there all night on those occasions "because it was too late to come home" and that she was to baby-sit only until the Clarks returned to the house.
Under these circumstances, particularly because the factual conclusions of the trial judge were based solely upon the testimony above discussed and because the controlling statutes are penal in nature and therefore must be strictly construed, we find no error in his conclusion, as stated in his Reasons for Judgment, that plaintiff has not borne her burden of proving any wages were due beyond those which the defendant had paid.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] The statutes read:

"It shall be the duty of every person, employing laborers or other employees of any kind whatever when discharging any laborer or other employee, or when any such laborer or employee has resigned, within twenty-four hours after such discharge or resignation, to pay the laborer or employee the amount due under the terms of employment whether the employment is by the day, week or month, upon demand being made upon the employer by the discharged or resigned laborer or employee at the place where the employee or laborer is usually paid." LSA-R.S. 23:631.
"Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety day's wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages. Reasonable attorneys' fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a well-founded suit for any unpaid wages whatsoever be filed by the laborer or employee after twenty-four hours shall have elapsed from time of making the first demand following discharge or resignation." LSA-R.S. 23:632.