458 So.2d 575 (1984)
Steve FOX and Scott Bailey, Plaintiffs-Appellants,
v.
DON SIEBARTH PONTIAC, INC., Defendant-Appellee.
No. 83-899.
Court of Appeal of Louisiana, Third Circuit.
October 10, 1984.
Writ Denied December 7, 1984.
*576 Adam L. Ortego, Jr., Sulphur, for plaintiffs-appellants.
James L. Babin, Lake Charles, for defendant-appellee.
Before GUIDRY, LABORDE and YELVERTON, Judges.
YELVERTON, Judge.
Steve Fox and Scott Bailey, car salesmen, appeal a trial court's rejection of their suit against their former employer, Don Siebarth Pontiac, Inc., for the commission on the sale of a vehicle. As co-plaintiffs, Fox and Bailey each demanded one-half of the commission on the sale of a 1982 Mercedes-Benz, claiming the sale was procured through their joint efforts, though not consummated until three months after Fox, allegedly the prime "procuring cause", left defendant's employ. The trial court found for defendant, concluding on the facts that plaintiffs had failed to prove they were entitled to a commission under the terms of their employment. Finding no manifest error in this factual determination, we affirm.
In the early part of 1981, while both Fox and Bailey were working for the defendant dealer, it was learned that Pat O'Carroll, a Lake Charles restaurateur, was interested in buying a Mercedes-Benz. It is disputed whether it was Fox or another salesman, Charles Shipp, who worked on the deal first, but there is no question that it was Fox, assisted by Bailey, with whom O'Carroll was dealing when an agreement was reached, the car ordered, and a $1,000 deposit obtained. A car meeting the buyer's specifications was hard to find, and took time; the deposit, at O'Carroll's request, *577 was returned to him in about May. The customer still wanted the car, however, and defendant's sales manager continued his efforts to locate one. On August 30 Fox was terminated for reasons unrelated to this deal. The car arrived in early December and, nearly three months after Fox left defendant's employ, the sale was completed by the defendant's sales manager. Later that month the other plaintiff, Bailey, resigned.
Plaintiffs, like all defendant's salesmen, were paid on a commission basis. In the middle of each month they were paid a draw of $200. At the beginning of each month their paycheck consisted of the commissions earned on sales completed the month before. It was understood and undisputed that a commission was not payable until the sale was completed, and a completed sale, by everybody's definition in the case, meant closing of the sale, payment of the price, and delivery of the car to the buyer.
The employment agreement was a verbal one. Both sides testified that the subject of payment of commissions on sales completed after termination of employment was never discussed. The issue, therefore, is whether plaintiffs proved facts supporting an inference that the employment contract for sale of cars provided for the vesting of commissions once a salesman became the "procuring cause" of a later completed sale, regardless of whether or not he participated in the closing of that sale.
In a suit to recover additional wages in excess of $500 under an oral contract of employment the basic rule governing proof is Civil Code art. 2277, which requires that plaintiff prove his case by one credible witness "and other corroborating circumstances." Taunton v. Cane Air, Inc., 405 So.2d 624 (La.App. 3rd Cir.1981); Taylor v. Clark, 304 So.2d 728 (La.App. 4th Cir.1974). Whether the evidence offered by plaintiff corroborates his claim is a finding to be made by the trier of fact, and is not subject to reversal unless it is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Taunton v. Cane Air, Inc., supra.
Although the trial judge did not give written reasons for judgment, it is clear from his comments made during and at the conclusion of the trial that he found plaintiffs failed to prove that they were entitled to a commission under the terms of their employment. It is evident that the trial court concluded that company policy and the understanding of the dealer's employees was that a salesman did not earn a commission until he completed the sale by getting the purchase price and delivering the vehicle.
There is evidence in the record offered by defendant explaining its practice and policy for the payment of commissions, which fully supports the trial judge's factual determination. There was testimony that a car salesman's work is not ended by simply finding a person willing and able to purchase; he must complete the sale, sometimes help arrange financing, get paid, make delivery of the car to the customer, instruct the buyer in the vehicle's operation, and answer questions and hear complaints after the sale is completed. The salesman's commission is considered payment for these services as much or more than for the selling job that got the sale in the first place.
Fox testified his understanding was that a salesman earned the commission if he made a sale that was ultimately consummated by payment and delivery, regardless of whether he was in the employ of the dealer when the sale was completed or not. He said he understood he would be paid, that being only fair. The dealer, just as vociferously citing fairness, declared that the practice to which he adhered was well known among his employees because it was "common horse sense" and did not need discussion. This was the testimony of Jack Hebert, the sales manager. Carol Clarke, defendant's finance and insurance manager for six years was, at the time of trial, employed by another dealer in Lake Charles. She testified that during the six years she worked for defendant, she was *578 paid on a commission and salary basis, and that she was not paid for sales she began working on but did not close before leaving and that, though this was not discussed, it was understood because that was "the way." Her replacement, an employee who was also paid on a commission basis testified similarly that this was her understanding.
The trial judge indicated during the trial he was interested only in the policy of this employer, and would not admit evidence of custom in the automobile retail industry. Nevertheless, despite this injunction, some evidence crept in on both sides, enough to indicate that there are at least some dealers whose accepted arrangements with their salesmen require completion of the sale, defined as payment for and delivery of the vehicle, before the salesman has earned his commission. (For a case which discusses the reasons for this practice, see Division of Labor Standards Enforcement v. Dick Bullis, Inc., 72 Cal.App.3d Supp. 52, 140 Cal.Rptr. 267 (1977).) The evidence was rather clear that the policy of the dealer in the instant case was not to pay a commission to a salesman who left its employ before the sale was completed. Apparently, in the automobile sales industry, it is getting paid the price and delivering the carthe completion of the sale that is regarded as the meaningful part of selling.
There was testimony that in some instances, if a salesman left during the consummation of a sale (for example, after payment of the price but before actual delivery), the company would pay him half the commission. In fact, that had occurred to the benefit of plaintiff Bailey after his departure. However, the testimony was uncontroverted that in every case where the completion of the deal was handled entirely by someone other than the initiating salesman, no portion of the commission was owed the initiating salesman by the dealer.
Apart from the trial judge's factual finding that it was not in the employment agreement, "procuring cause", in our opinion, does not operate as a legal principle compelling the vesting of an earned commission in the sale of a car. The term is established in the law of real estate brokerage contracts. Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977). We doubt, however, that it is appropriate for salesmanship of movables. We have found no case in this state upholding a commission for the sale of movables based solely on a finding that the salesman was the procuring cause. The closest case arguably supporting plaintiffs' theory is Rubenstein Bros. v. LaForte, 320 So.2d 303 (La.App. 4th Cir.1975). There, a five judge court voting three to two said that while it did not agree with some of the findings of the trial judge, finding no manifest error it would affirm the holding that, in the absence of a policy to the contrary on the part of the employer, a salesman was entitled to the full commission on "special order" sales made before his resignation but not delivered to and accepted by the purchaser until after the salesman's resignation. The significance of that case to ours is evidenced by the emphasized language, because in the instant case, the trial judge found that there was a policy of this employer, which was probably known by the plaintiffs, that a salesman leaving its employ before a sale was completed was not entitled to a commission.
In Broderick v. Taylor, 161 So. 630 (La. App. 2nd Cir.1935), it was held as a matter of law that an agreement for the sale of an item from a marble and granite works did not entitle the salesman, who left defendant before the stone was delivered and paid for, to a commission. A similar ruling in a case of the sale of a movable appears in Tricou v. Phillip H. Sizeler, Inc., 195 So. 361 (La.App.Orl.1940).
Although quantum meruit was not argued by plaintiffs, we have considered whether they might be entitled to recovery under that theory, and we conclude that they are not. In Perry v. Al George, Inc., *579 428 So.2d 1309 (La.App. 3rd Cir.1983), we affirmed a trial court's award in quantum meruit made by a salesman claiming commissions after the termination of his employment, based on sales made before he was terminated. There are a number of significant differences between the facts of that case and the instant case, not the least among which is that there was no evidence in the Perry case of a policy or experience governing the payment of commissions after termination. Moreover, the difficulty of applying quantum meruit to commissions on automobile sales is readily apparent. The instant case is a good example: four people worked on this sale, beginning with Charles Shipp, who left defendant's employ a month after Fox went to work, continuing with Fox, who enlisted the help of plaintiff Scott Bailey, and finally, ending up with Jack Hebert, the sales manager. Quantum meruit is not an appropriate standard to resolve such potential disputes, because there is a high rate of mobility with car salesmen, and conflicts will inevitably arise over the division of the commission when more than one person has worked on a deal, some being gone and some still with the agency by the time the sale is completed and the commission is ready to be paid. By contrast, in the Perry case, supra, once the sale was made the salesman's entitlement to commissions was credited to him on the books. Thereafter, the salesman was paid proportionately as his employer was paid for the equipment sold. In the Perry case, the salesman continued to perform his duties even after termination, and the trial court's award in quantum meruit was based upon what the salesman actually earned. To the contrary, it appears that in the automobile sales industry, it is not uncommon for entitlement to a commission to be considered earned only when the sale is completed.
We find no manifest error in the trial court's judgment. We affirm, at appellants' costs.
AFFIRMED.