| | | |
|---|---|---|
| **WALID ATTAMARI** | * | **NO. 2024-CA-0128** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **ALLSTATE PROPERTY AND** | * | |
| **CASUALTY INSURANCE** | | **FOURTH CIRCUIT** |
| **COMPANY** | * | |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
SECOND CITY COURT OF NEW ORLEANS
NO. 2021-00876, "D"
Honorable Ernestine Lillie Anderson-Trahan, Judge
**\* \* \* \* \* \***
**Chief Judge Terri F. Love**
**\* \* \* \* \* \***

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge
Dale N. Atkins)

**BELSOME, J., DISSENTS WITH REASONS**

Adam S. Lambert
ATTORNEY AT LAW
3531 Plymouth Place
New Orleans, LA 70131

      COUNSEL FOR PLAINTIFF/APPELLEE


James L. Donovan, Jr.
Sean M. Donovan
DONOVAN & LAWLER, APLC
4640 Rye Street
Metairie, LA 70006

      COUNSEL FOR DEFENDANT/APPELLANT


          **JUDGMENT AMENDED AND AFFIRMED
          AS AMENDED; EXCEPTION OF
          PRESCRIPTION DENIED; ANSWER TO
          APPEAL DENIED**

          **OCTOBER 4, 2024**

**TFL**

**DNA**

This matter arises out of a default judgment the insured, Walid Attamari (Mr. Attamari), obtained against his insurer, Allstate Property and Casualty Insurance Company ("Allstate"), as a result of injuries sustained in a May 25, 2018 automobile accident.

Mr. Attamari made an underinsured ("UM") motorist demand against Allstate after the tortfeasors' insurer submitted its $15,000.00 policy limits. On October 28, 2021, Mr. Attamari filed a Petition for Damages and Bad Faith (the "Petition"), alleging that Allstate's $7,500.00 unconditional tender offer ("tender offer")—one-half of his $15,000.00 UM coverage—was insufficient. After receiving no answer from Allstate, Mr. Attamari obtained a default judgment on February 14, 2022. The trial court awarded $6,500.00 in general damages; $1,000.00 in lost wages; a $15,000.00 penalty for bad faith; and $7,500.00 for reasonable attorney's fees. Thereafter, the trial court denied Allstate's motion for new trial.[1]

_____

[1] Judge Ad Hoc Nadine Ramsey granted the default judgment and Judge E. "Teena" Anderson-Trahan presided over Allstate's Motion for New Trial.

1

On appeal, Appellant, Allstate, contends that Mr. Attamari did not follow the proper procedures and did not establish a prima facie case to entitle him to a default judgment. Allstate also alleges that Mr. Attamari's Petition was prescribed, as the complaint was filed more than two years after the underlying May 25, 2018 accident date. Mr. Attamari's answer to Allstate's appeal maintains the appeal is frivolous and seeks damages and attorney's fees.

The record supports Mr. Attamari complied with the requisite procedures and put forth a prima facie case to obtain a default judgment. Moreover, the allegations pled within the Petition show that it was timely filed within two years of Allstate's tender offer. Accordingly, we deny Allstate's exception of prescription and find no abuse of the trial court's discretion in granting the default judgment and denying Allstate's motion for new trial.

However, the trial court's awards of $15,000.00 for bad faith and $7,500.00 in reasonable attorney's fees were excessive. The imposition of bad faith penalties when a tender offer has been made is limited to fifty percent of the difference between the amount owed and the tender offer. Hence, Allstate's bad faith penalty award is reduced to $3,750.00, which is fifty percent of the difference between Mr. Attamari's UM demand of $15,000.00 and Allstate's $7,500.00 tender offer. Concomitantly, the attorney fee award is reduced from $7,500.00 to $3,750.00, which represents one-third of the total recovery pursuant to Mr. Attamari's contract with his counsel. Therefore, we amend the judgment, and affirm as amended.

Further, we deny Mr. Attamari's request for damages and attorney's fees based on a frivolous appeal, finding merit to some of the errors maintained by Allstate.

2

**FACTUAL AND PROCEDURAL HISTORY**

Mr. Attamari was involved in an automobile accident and sustained injuries when a vehicle operated by the tortfeasors, insureds of State Farm Mutual Insurance Company ("State Farm"), ran a stop sign. Mr. Attamari claimed injuries to his right wrist, cervical spine, upper thoracic area, and was diagnosed with costochondritis. State Farm paid its policy limits of $15,000.00.

In June 2019, Mr. Attamari made an UM claim against Allstate, his insurer, for all sums due in excess of the amount extended by State Farm. On December 19, 2019, Allstate unconditionally tendered $7,500.00, half of Mr. Attamari's $15,000.00 policy limits. Mr. Attamari rejected Allstate's tender offer; and on October 28, 2021, proceeded to file the Petition, seeking damages and penalties for Allstate's bad faith. The Petition, filed in Second City Court for the City of New Orleans ("Second City Court"), was served on Allstate on December 1, 2021. Upon receiving no answer or communication from Allstate, Mr. Attamari filed a Motion for Default on February 14, 2022. In the motion, Mr. Attamari asserted that the Petition was filed on October 28, 2021; personal service was made on Allstate on December 1, 2021, through the Secretary of State; his counsel sent a letter via USPS First Class Mail to Allstate on February 2, 2021; and that no answer had been filed as of the date Mr. Attamari sought the default judgment.[2] The Clerk of Court certified that Allstate had not filed an answer.

At the hearing on the default judgment, Mr. Attamari testified regarding the accident facts, his injuries, medical treatment—which included needles in his

---

[2] For actions filed in parish and city courts, La. C.C.P. art. 4903 provides that "[t]he defendant shall answer within ten days of the service of citation, except that when the citation is served through the secretary of state, the delay, as to all defendants, shall be fifteen days after service."

neck—medical expenses, and time missed from work. He asserted that it took almost two years for him to fully recover. The record contained exhibits identified as the police report of the accident; Mr. Attamari's certified medical records from Spine Care and East Jefferson General Hospital; a notarized statement from Mr. Attamari's employer verifying his wage loss; signed affidavits from the State Farm tortfeasors, dated May 22, 2019, that no other insurance existed for the vehicle involved in the May 25, 2018 accident; a May 24, 2019 signed release from Mr. Attamari to State Farm reflecting settlement in the amount of $15,000.00 (the "Release"); an August 8, 2019 check from State Farm to Mr. Attamari in the amount of $13,014.20; an August 8, 2019 check for $1,985.80 from State Farm to Mr. Attamari, his counsel, and Allstate; and lien information communications from Allstate to Mr. Attamari listing Mr. Attamari as its insured in connection with the May 25, 2019 accident date. The lien information also included correspondence from Allstate to Mr. Attamari regarding medical payments and April 23, 2019 correspondence placing Mr. Attamari on notice of Allstate's $1,985.80 subrogation lien.

Prior to his summation, the trial court declined counsel's request to question Mr. Attamari.[3] In his summation, counsel supported Mr. Attamari's entitlement to

---

[3] The transcript reflects the following exchange between Mr. Attamari's counsel and the trial court.

MR. LAMBERT:

> And, your Honor, I have an Affidavit from his employer. He works at Spur General Meyer. They said he missed more time than that, but that's what they have an easy record of. He missed two weeks – the two weeks right after the accident and he had to use all of his vacation time for two weeks, and he was paid Five Hundred (500.00) a week. So I'll give you, Your Honor, a chance to look at all that and then I'll make my summation, unless the Court has any questions.

4

his maximum $15,000.00 UM limits with jurisprudence from the early 2000s that placed a minimum award of $2,500.00 per month for similar injuries and allowed for an increase in monthly damages from $2,500.00 to $4,500.00 based on the current cost of living. At the hearing's conclusion, "on producing to the Court due proof in support of the plaintiff's demands, the Court considering the law and the evidence to be in favor of the plaintiff," awarded Mr. Attamari the amounts requested: $6,500.00 in general damages; $1,000.00 in lost wages; $15,000.00 for bad faith penalties; and $7,500.00 for attorney's fees.

Subsequent thereto, Allstate filed its motion for new trial. The motion maintained that Mr. Attamari did not comply with La. C.C.P. art. 1702 procedures to obtain a default judgment, included insufficient and inadmissible evidence, and asserted—via a footnote–that the Petition was prescribed on its face because suit was filed more than two years after the accident. Allstate re-urged its challenge to the competency of the evidence at the hearing; however, it conceded that La. C.C.P. art. 4904 governed the default judgment procedures for city court actions.[4]

Mr. Attamari countered that he presented competent evidence and followed the procedures outlined in La. C.C.P. art. 4904 for a default judgment in actions arising out of city courts. He added that Allstate's December 19, 2019 tender offer interrupted prescription; and therefore, the Petition was timely because it was filed within two years of the tender offer.

The trial court denied Allstate's motion for new trial. In rejecting Allstate's arguments, the trial court observed, in part, that "[i]t sounds like you [Allstate]

THE COURT:

I have no questions.

[4] Mr. Donovan, Allstate's counsel stated, in part, "[c]ounsel has cited Louisiana Code of Civil Procedure Article 4904, which is, in fact correct; and my office was wrong in that regard."

5

want to try and [c]ross-examine and do everything that happens at trial, but you weren't at the trial . . ." The trial court also inquired "[w]hy didn't you [Allstate] answer and come to [t]rial to say all of this?" Allstate acknowledged that it did not file an answer until February 15, 2023, the day after the default judgment was obtained.

Thereafter, Allstate timely filed the present appeal, and Mr. Attamari filed an answer seeking damages for a frivolous appeal.

## ASSIGNMENTS OF ERROR

Allstate's assignments of error fall broadly within two categories: (1) the trial court erred in granting the default judgment because Mr. Attamari did not follow the proper procedures and lacked sufficient proof to obtain a default judgment; and (2) Mr. Attamari's Petition was prescribed on its face. This Court shall first consider Allstate's exception of prescription, as resolution of that issue in Allstate's favor would render moot the remaining errors regarding the validity of the default judgment.

### *Exception of Prescription*

Allstate's exception of prescription is premised on its position that La. R.S. 9:5629 provides that UM claims are subject to a two-year prescriptive period and the time begins to run from the date of the accident in which the damages were sustained.[5] Allstate emphasizes that the Petition is prescribed on its face because the accident happened on May 25, 2018, and suit was not filed until October 28, 2021, more than two years after the accident date.

---

[5] Louisiana Revised Statute 9:5629 states that "[a]ctions for the recovery of damages sustained in motor vehicle accidents brought pursuant to uninsured motorist provisions in motor vehicle insurance policies are prescribed by two years reckoning from the date of the accident in which the damage was sustained."

In Louisiana, the burden of proof on an exception of prescription rests with the party pleading the exception. *See Med. Rev. Panel Proc. for Timpton v. Touro Infirmary*, 2020-0522, p. 5 (La. App. 4 Cir. 2/10/21), 313 So.3d 1022, 1027 (citation omitted). However, the burden shifts to the opposing party in the event the face of the petition reveals the opponent's case has prescribed. *Id.* In those matters where evidence is introduced, the trial court's findings are reviewed under the manifest error standard of review. *Id.*, 2020-0522, p. 4, 313 So.3d at 1027 (citation omitted). If no evidence is introduced, then the *de novo* standard of review applies, and the exception is decided based on the petition's allegations, which are accepted as true. *Id.*

In the matter *sub judice*, Mr. Attamari's Petition represented the following:

8.

An Underinsured Motorist ("UM") claim was made on the defendant insurer for all sums due in excess of the amounts paid by State Farm, but defendant's UM payment was untimely under the law and defendant further refuses to pay the total amount due under the circumstances.

9.

On or about December 19, 2019, the defendant made an unconditional tender of $7,500.00 under the plaintiff's UM policy, which amount is half of the $15,000.00 policy limits and well below the amount reasonably due under the circumstances for the plaintiff's severe personal injuries. Despite several demands therefore, the defendant refuses to pay anything more.

10.

The defendant has refused to pay all of the amounts reasonably due for the plaintiff's serious injuries, medical expenses, and other general and special damages owed.

11.

Said defendant insurer has violated its duties under *McDill v. Utica* and Louisiana laws, including but not limited to those laws relating to the duties of good faith and actions of bad faith by:

7

A) Denying coverage arbitrarily and capriciously;
B) Failing to pay timely;
C) Failing to fairly and adjust the plaintiff's claims; and
D) Failing to deal in good faith on a UM claim.

Accordingly, Mr. Attamari counters that "on the face of the petition," his UM complaint was timely in that the Petition—filed on October 28, 2021—was filed within two years of Allstate's unconditional tender, an act that interrupted prescription pursuant to La. C.C. art. 3466 [6] and *Demma v. Auto. Club Inter-Ins. Exch.*, 2008-2810 (La. 6/26/09), 15 So.3d 95. We agree.

In *Demma*, 2008-2810, pp. 7-10, 15 So.3d at 100-02, the Court determined that an unconditional payment made by the uninsured motorist carrier to the insured was an acknowledgement of liability sufficient to interrupt prescription. Here, Mr. Attamari's Petition alleged that Allstate made an unconditional tender offer on December 19, 2019, and suit was filed on October 28, 2021. Allstate offered no evidence at the motion for new trial hearing in support its exception of prescription or to rebut Mr. Attamari's claim of a tender offer. Under those circumstances where no evidence is presented, "the exception is decided based on the facts alleged in the petition, [] which are accepted as true." *Med. Rev. Panel Proc. for Timpton*, 2020-0522, p. 4, 313 So.3d at 1027 (citation omitted).

We also note that Mr. Attamari's opposition to the exception of prescription includes a copy of Allstate's December 19, 2021 correspondence to his counsel wherein Allstate conveyed a tender offer of $7,500.00.[7] The correspondence encompassed the following:

---

[6] La. C.C. art. 3466 provides that "[i]f prescription is interrupted the time that has run is not counted. Prescription commences to run anew from the last day of interruption."

[7] Mr. Attamari also represents that Allstate's communication of the tender offer was made a part of the record of the default judgment hearing.

12/19/2019

ADAM S LAMBERT,

ENCLOSED PLEASE FIND PAYMENT IN THE AMOUNT OF $7500.00 FOR YOUR UNCONDITIONAL TENDER OF UNDISPUTED AMOUNT FOR UNDERINSURED MOTORIST BI LOSS OF 5/25/2018.

CLAIM NUMBER: 0503525957
DATE OF LOSS:    5/25/2018
INSURED:                WALID ATTAMARI

In payment for Underinsured Motorist Bodily Injury for Date of Loss 5/28/2018.

Accordingly, applying the precepts set forth in *Demma* and *Timpton*, *infra*, wherein we accept the facts pled in the Petition as true, Mr. Attamari's Petition is timely "on its face." Moreover, Allstate's December 19, 2019 tender offer correspondence reinforces the timeliness of the Petition. Accordingly, this Court denies Allstate's exception of prescription. We now return to address the merits of the appeal.

### *Default Judgment*

Allstate's errors regarding the propriety of the default judgment encompass three categories, namely, that (i) default judgment procedures were not properly followed; (ii) Mr. Attamari did not make a prima facie case for a UM claim; and (iii) the evidence did not show bad faith and support the trial court's judgment of $15,000.00 for "the amount in controversy" and $7,500.00 in attorney's fees.

### <u>Standard of Review</u>

In reviewing a default judgment, an appellate court is limited to determining the sufficiency of the evidence offered in support of the judgment. *Sarasota, CCM, Inc. v. Supreme Quality Transp., LLC*, 2023-0658, p. 3 (La. App. 4 Cir. 3/6/24), 385 So.3d 307, 310 (citation omitted). As this finding is a factual one, the

9

manifest error standard of review applies to decide if the trial court's determinations were clearly wrong in light of the entirety of the evidence. *Id.*, 2023-0658, p. 4, 385 So.3d at 310-11 (citations omitted).

**Proper Procedures**

On appeal, Allstate relies on La. C.C.P. art. 1702 to argue that Mr. Attamari's alleged failure to place into the record a required notice letter, through the Secretary of State, to advise Allstate that he intended to move for a default judgment seven days before the default date and his failure to obtain a preliminary default prior to confirmation of the default judgment were fatal defects. Louisiana Code of Civil Procedure Article 1702(A)(1) provides, in part, that "[i]f a defendant in the principal or incidental demand fails to answer . . . , a default judgment in favor of the plaintiff may be rendered, provided that notice that the plaintiff intends to obtain a default judgment is sent if required by this Paragraph . . . ."

However, Mr. Attamari responds that the Petition was filed in Second City Court and default judgment procedures in city courts are controlled by La C.C.P. art. 4904. In particular, La. C.C.P. art. 4904(A) expresses the following:

> In suits in a parish court or a city court, if the defendant fails to answer timely, or if he fails to appear at the trial, and the plaintiff establishes a prima facie case by competent and admissible evidence, a default judgment in favor of the plaintiff may be rendered.

There is no dispute herein that Mr. Attamari's action was filed in Second City Court. As such, La. C.C.P. art. 4904 controls the procedure to obtain a default judgment. Upon review, La. C.C.P. art. 4904 does not mandate notice or a confirmation of a preliminary default to obtain a default judgment. *See Universal Furniture House, Inc. v. Brown*, 1994-193, p. 2 (La. App. 5 Cir. 7/26/94), 641 So.2d 640, 641. The article's only requirement is for the plaintiff to establish a

10

prima facie case by competent and admissible evidence. Consequently, Allstate's claims that proper procedures were not followed because Allstate did not receive notice or a preliminary default was not confirmed are not meritorious. [8]

### Prima Facie Evidence/ Proof of UM Coverage

An appellate court's review of a default judgment considers whether the record contains sufficient evidence to support a prima face case. *See Gresham v. Prod. Mgmt, Inc.*, 2002-1228, pp. 3-4 (La. App. 4 Cir. 2/11/04), 868 So.2d 171, 175 (citations omitted). A plaintiff seeking to obtain a default judgment must support the elements of a prima facie case with competent evidence as fully as though the defendant had denied each of the allegations. *Id.*, 2002-1228, p. 4, 868 So.2d at 175. Competent evidence is that which convinces the trial court it is more probable than not that the plaintiff would prevail at a trial on the merits. *Id.*

Allstate claims Mr. Attamari did not establish a prima facie UM claim because he did not offer into evidence copies of the tortfeasors' liability policy or his Allstate insurance policy. In support of this claim, Allstate primarily relies on *Yancy v. Liberty Surplus Ins. Co.*, 2008-0280, pp. 2-3 (La. App. 4 Cir. 9/24/08), 996 So.2d 47, 49, and *Peel v. Ray*, 572 So.2d 739, 740 (La. App. 4th Cir. 1990).

In *Yancy*, 2008-0280, p. 1, 996 So.2d at 48, the defendants' liability insurers appealed the plaintiffs' default judgment. The insurers argued, in part, that the

---

[8] Mr. Attamari also argues that although La. C.C.P. art. 4902 imposed no duty to send notice of intent to default to Allstate, nevertheless, he complied with the requirements of La. C.C.P. art. 1702(A)(4) to submit a courtesy copy of the impending default via regular mail. Louisiana Code of Civil Procedure Article 1702(A)(4) states the following:

> (4) In cases involving delictual actions where neither Subparagraph (2) or (3) of this Paragraph applies, notice that the plaintiff intends to obtain a default judgment shall be sent by regular mail to the party who fails to answer at the address where service was obtained at least seven days before a default judgment may be rendered.

plaintiffs failed to present any evidence of the insurance coverage afforded to the defendants. *Id.*, 2008-0280, p. 2, 996 So.2d at 48-49. The appellate court, relying, in part, on *Peel*, vacated the trial court's grant of summary judgment, determining that without the introduction of the insurance contract, a valid default judgment could not be entered. *Id.*, 2008-0280, pp. 2-3, 996 So.2d at 49.

In *Peel*, 572 So.2d at 739, the plaintiff filed a suit against the defendant, the defendant's insurer, and Automotive Casualty, identified as "the uninsured/underinsured, comprehensive and/or liability carrier for plaintiff." At the confirmation of the default judgment against his UM carrier, the plaintiff testified he had "automobile insurance" with Automotive Casualty. *Id.,* 572 So.2d at 739. "No documents were presented to prove either the existence of an insurance contract between the plaintiff and Automotive Casualty or to prove the alleged personal injury." *Id.*, 572 So.2d at 739-40. Accordingly, the *Peel* Court reversed the default judgment, noting that plaintiff had not produced any sufficient evidence that Automotive Casualty was liable for any damages sustained or to document his injuries. *Id.*, 572 So.2d at 740.[9] Notwithstanding the requirement for

---

[9] In its reasoning, the *Peel* Court referenced *Brown v. Trinity Ins. Co.*, 480 So.2d 919 (La. App. 2d Cir. 1985), a case where the plaintiff's default judgment against the defendant's alleged insurer was reversed. The Court noted the following:

> In *Brown,* the plaintiff presented letters from the insurer's claims supervisors to the plaintiff's attorney and a copy of a letter concerning settlement from the claims supervisor to the finance company. The court found that the letters were insufficient proof of insurance. In the instant case, the plaintiff testified only that he had "automobile insurance" with defendant Automotive Casualty, without offering the policy or specifying the type of insurance. Since the plaintiff in the instant case offered even less proof of insurance than the plaintiff in *Brown,* he failed to present sufficient evidence that Automotive Casualty was liable for any damages he may have sustained in the automobile accident. Thus, the trial court improperly granted the default judgment.

*Peel*, 572 So.2d at 740.

the production of the insurances policies, upon review, we find the facts of this case distinguishable from *Yancy* and *Peel* and find the cases do not compel the same results.

In *Yancy*, the plaintiff attempted to obtain a default judgment against the liability insurers of the defendants without any evidence of the insurance policies to show coverage—policies/contracts to which the plaintiff was not a party and had no first-hand knowledge. Contrariwise, in the present case, Mr. Attamari sought recovery against his own carrier. As such, as a party to the contract, Mr. Attamari had independent, first-hand knowledge of its terms and conditions, and as discussed herein, provided evidence of coverage.

Akin to this matter, this Court acknowledges that the *Peel* facts also involved the validity of a default judgment granted against the plaintiff's UM carrier. However, the cases are dissimilar. In *Peel*, the default judgment was reversed not only because the plaintiff did not provide the UM policy, he also failed to produce any corroborating evidence of his UM coverage or supporting evidence of his injuries—outside of his testimony. 572 So.2d at 740. This is not the situation here.

As to evidence of the tortfeasors' insurance coverage with State Farm, Mr. Attamari's exhibits included separate Sworn Statements of No Other Insurance ("Sworn Statements") from Latoya Bush and Chanell Bush, dated May 22, 2019, attesting as follows:

> [T]hat for the accident which occurred on May 25, 2018, the only insurance available to pay for that claim was the state minimum ($15,000.00) liability policy with State Farm Mutual Insurance Company. I specifically declare under oath that I have no other auto liability insurance policy on this vehicle **or any other vehicle.**

Moreover, as previously noted, Mr. Attamari's evidence of State Farm's coverage included the Release and the check payments from State Farm to Mr. Attamari and Allstate, highlighting the accident date and naming Chanell and Latoya Bush as the State Farm insureds.

As to proof of his Allstate insurance coverage, Mr. Attamari's record exhibits included the 2019 lien communication exhibits, which identified Mr. Attamari as Allstate's insured, referenced the accident date, medical payments made, and notice of a subrogation lien. Allstate's listing as a payee on the subrogation check from State Farm to Mr. Attamari also underscored its status as Mr. Attamari's carrier. Further, as previously referenced, Mr. Attamari noted in his opposition to the prescription exception, Allstate's December 19, 2019 UM tender offer. Mr. Attamari also offered into evidence the police report exhibit, which identified the parties in the accident and their respective carriers.

Allstate submits, however, that the police report is not admissible because it constitutes hearsay evidence. Nevertheless, Allstate avers that if the police report were admissible, it suggests that a car dealership was the actual owner of the tortfeasors' vehicle. If such were the case, then, Allstate argues that Mr. Attamari did not produce evidence of the car dealership's insurance coverage for purposes of determining if other liability coverages existed to compensate Mr. Attamari for his damages and to undermine his entitlement to UM recovery against Allstate.

In an additional challenge to the liability limits on the tortfeasors' vehicle, Allstate also argues that the wording of the tortfeasors' Sworn Statements does not conclusively prove their involvement in the accident at issue or establish State Farm maximum policy limits of $15,000.00. Allstate alleges that the Sworn

14

Statements were vague. It contends that the verbiage used does not rule out the availability of another liability policy on the at-fault vehicle.

We agree with Allstate that inadmissible evidence, except that specifically provided by law, cannot be used in support of a default judgment. *See Martinez v. Wilson*, 2015-0384, p. 4 (La. App. 1 Cir. 12/17/15), 185 So.3d 65, 68 (citations omitted). However, we find Allstate's challenge to the admissibility of the police report unpersuasive. This Court recognizes that Louisiana courts generally exclude police reports from being admitted under any exception to the hearsay rule when they contain conclusions and opinions from talking to other witnesses. *See Domingo v. State Farm Mut. Auto Ins. Co.*, 2010-264, 2010-316, p. 11 (La. App. 5 Cir. 11/9/10), 54 So.3d 74, 80 (citations omitted). Notwithstanding, in this case, Mr. Attamari provided his own testimony regarding the accident facts and offered the tortfeasors' Sworn Statements regarding their participation in the accident. Hence, there was other evidence in the record outside the police report to show the accident facts, establish the tortfeasors' liability, and the insurance coverages. Under the circumstances, the admission of the police report into evidence, if error, amounted to harmless error. *See Goza v. Par. of West Baton Rouge*, 2008-0086, p. 11 (La. App. 1 Cir. 5/5/09), 21 So.3d 320, 330 (citations omitted).

We also find that Allstate's challenges regarding the existence of other insurance coverages by the car dealership owner and the comprehensiveness of the tortfeasors' Sworn Statements are defenses to Mr. Attamari's evidence that could have been raised at trial. Such issues that might have raised in defense to the suit are forever foreclosed upon rendition of the judgment of default. *Gresham*, 2002-1228, p. 4, 868 So.2d at 175. Accordingly, these arguments require no review by this Court.

"When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima face case, shall be admissible, self-authenticating, and sufficient proof of such demand." *Id.*, 2002-1228, p. 4, 868 So.2d at 175 (citation omitted). Our jurisprudence is well-settled that a party to a lawsuit may serve as his own "credible witness" provided that he offers other evidence to corroborate his claim. *See O'Rourke v. Tracy*, 375 So.2d 747, 748 (La. App. 4th Cir. 1979). This corroboration means general corroboration only, and does not compel independent proof of each detail of the witness' testimony. *Id.*

Here, Mr. Attamari provided general corroboration that State Farm was the liability carrier for the tortfeasors and that the policy limits amounted to $15,000.00. Nonetheless, State Farm, as the tortfeasors' liability carrier, is not a party to the default judgment at issue herein. Hence, inapposite to *Yancy*, Mr. Attamari need not produce a certified copy of the State Farm liability policy where its insureds have sworn to the policy's existence, limits and provided other corroborating evidence confirming the policy limits.

As to Allstate, Mr. Attamari testified and judicially admitted in his Petition that he had an Allstate policy with UM limits of $15,000.00. He provided corresponding exhibits and correspondence in which Allstate acknowledged Mr. Attamari as its insured. Our jurisprudence is well-established that the issue as to whether the corresponding evidence corroborates the plaintiff's testimony is to be determined by the factfinder; and should not be reversed unless it is clearly wrong. *See Taylor v. Clark,* 304 So.2d 728 (La. App. 4th Cir. 1974). Here, the trial court clearly accredited the testimony of Mr. Attamari, and we cannot say that it was

16

clearly wrong to do so. As such, we find that Mr. Attamari's testimony and the corresponding evidence constituted general corroboration that Allstate was his UM carrier without the necessity of offering into evidence an actual copy of the Allstate policy. Therefore, based on the particular circumstances of this case, Mr. Attamari provided competent prima facie evidence to recover UM benefits. This error lacks merit.

**Bad Faith**

Allstate contends that the awards of $15,000.00 for the amount in controversy and $7,500.00 for attorney's fees should be set aside because Mr. Attamari provided no evidence of bad faith in Allstate's handling of his UM claim.

Louisiana Revised Statute 22:1892 provides, *inter alia*, the following:

A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:1811, 1821, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. . . .

. . . .

B. (1)(a) Except as provided in Subparagraph (b) of this Paragraph, failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor . . . when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or in the event a partial payment or tender has been made, fifty percent of the difference between the amount paid or tendered and the amount found to be due as well as reasonable attorney fees and costs. . . .

The claimant in a UM claim has the burden of proving the insurer failed to pay the claim within 60 days after receiving "satisfactory proof of loss." *See McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1089 (La. 1985).

> To establish a "satisfactory proof of loss" of an uninsured/underinsured motorist's claim, the insured must establish that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of the damages.

*Id.* (citation omitted).

Mr. Attamari maintains that his testimony and the record evidence meet the requisite elements to establish satisfactory proof of loss. He underscores that the record supported he made a UM demand on Allstate; established the tortfeasors' fault and their insufficient liability policy limits; produced certified medical records and expenses which showed the nature and scope of his physical injuries; related the injuries to the accident date; documented his wage loss; and Allstate's failure to timely pay.

A trial court's determination as to whether an insurer acted in bad faith is largely a factual finding that will not be disturbed on appeal absent manifest error. *See Arcenaux v. Amstar Corp.*, 2006-1592, p. 41 (La. App. 4 Cir. 10/31/07), 969 So.2d 755, 781 (citations omitted). In this matter, the trial court determined the evidence showed that Mr. Attamari had UM coverage with Allstate; Allstate had notice of the tortfeasors' fault and lack of sufficient coverage; and Allstate failed to timely make a reasonable offer to tender Mr. Attamari's $15,000.00 policy limits upon demand and receipt of medical records documenting his damages. Hence, in according deference to the findings of the trial court, we cannot say that the trial court was manifestly erroneous in its determination that Allstate acted in bad faith and was arbitrary and capricious in its failure to timely tender the remaining $7,500.00 of Mr. Attamari's UM policy limits. However, we do find merit to

Allstate's argument that the awards of damages for bad faith in the sum of $15,000.00 and reasonable attorney's fees of $7,500.00 were excessive.

**Bad Faith Damages**

Mr. Attamari judicially admits that Allstate tendered $7,500.00, one-half of his $15,000.00 UM limits. A review of the transcript reflects that Mr. Attamari's counsel requested bad faith penalties of $15,000.00—the self-designated amount in controversy—specifically arguing that "we would be within our rights to ask for double the amount of all damages, but we're asking for double the amount of the Seventy Five Hundred ($7500.00), which is the amount in controversy." However, La. R.S. 22:1892(B)(1)(a) calculates bad faith penalties in the event a tender has been made based on "fifty percent of the difference between the amount paid or tendered and the amount found to be due . . . ." In this case, fifty percent of the difference between the amount due of $15,000.00 and the $7,500.00 tender equals $3,750.00. Accordingly, we reduce the bad faith penalty award from $15,000.00 to $3,750.00.

Although La. R.S. 22:1892(B)(1)(a) allows for an award of reasonable attorney's fees for bad faith, the statute does not specify a formula to calculate the award. The trial court awarded attorney's fees herein of $7,500.00 based on counsel's representation that "my contract calls for one-third attorney's fee which is $7,500.00." Consequently, the $7,500.00 fee amounted to one-third of the trial court's total award of $22,500.00, encompassing the awards of $6,500.00 in general damages, $1,000.00 in lost wages, and $15,000.00 for bad faith. However, upon this Court's limitation of Mr. Attamari's bad faith penalty award to $3,750.00, his total recovery has been reduced to $11,250.00. Therefore, pursuant

to counsel's one-third recovery contract fee with Mr. Attamari, we amend the reasonable attorney award to $3,750.00.

***Motion for New Trial***

Allstate timely sought a new trial to vacate the default judgment based on alleged procedural defects and the competency of the evidence. To vacate a default judgment based on procedural defects, the defendant who has been properly served must demonstrate how it was prevented from filing a responsive pleading or asserting its defenses. *Kimble v. Curahealth New Orleans, LLC*, 2020-0286, p. 9 (La. App. 4 Cir. 7/8/20), 302 So.3d 579, 585. Here, Allstate admitted that it had been properly served and made no claim that it had been unduly prevented from timely filing a response or asserting defenses. Additionally, Allstate raised no argument that the denial of its motion for new trial would amount to a miscarriage of justice. *See Lamb v. Lamb*, 430 So.2d 51, 53 (La. 1983) (which reasoned that "not every motion for a new trial filed timely after a default judgment warrants the granting of a new trial, for not every case is a miscarriage of justice.")

The standard of review for a trial court's ruling on a motion for new trial is abuse of discretion. *See Kimble*, 2020-0286, p. 4 (La. App. 4 Cir. 7/8/2020), 302 So.3d 579, 582 (citation omitted). Thus, having already found no procedural defects and determined that competent prima facie evidence was offered to sustain the trial court's grant of the default judgment, the trial court did not abuse its discretion in the denial of Allstate's motion for new trial.

***Answer to Appeal***

In accordance with La. C.C.P. art. 2164, appellate courts have the authority to render any judgment warranted by the record on appeal, including an award of

damages for a frivolous appeal.[10] *See Hunter v. Maximum Grp. Behav. Servs., Inc.*, 2010-0930, p. 6 (La. App. 4 Cir. 3/16/11), 61 So.3d 735, 739. Damages for a frivolous appeal will be awarded if appellant's motive is simply to delay, appellant's counsel does not seriously believe in the cause he or she advocates, or the matter presents no substantial legal question. *Id.* (citations omitted). However, appeals are generally favored. *Id*. (citation omitted). Therefore, damages will not be awarded unless the appeal is clearly frivolous so as to limit the possible chilling effect frivolous damage awards would have on the appellate process. *Id.*

Mr. Attamari maintains the appeal is frivolous because Allstate does not seriously believe in the position it advocates and the appeal is intended solely to delay. Mr. Attamari stresses that although Allstate argues on appeal that it did not receive proper notice for purposes of confirming a default judgment, Allstate admitted at the hearing on the motion for new trial that La. C.C.P. art. 4904 controlled the confirmation of default judgments in city courts; and moreover, that the article did not require such notice. Mr. Attamari also highlights that Allstate knew its exception of prescription lacked merit and the Petition was timely filed as Allstate's own records showed it made a tender offer, which interrupted prescription. Upon review, Mr. Attamari's arguments are not meritorious.

Allstate's appeal raised substantial legal issues. Specifically, this Court found merit to Allstate's arguments that the bad faith and attorney's fees awards

_____

[10] Louisiana Code of Civil Procedure Article 2164 states the following:

> The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The Court may award damages, including attorney fees, for frivolous appeal or application for wits, and may tax the costs of the lower or appellate court, or any part thereof, against any part to the suit, as in its judgment may be considered equitable.

21

were excessive.  Accordingly, Mr. Attamari's request for frivolous appeal damages is denied.

## DECREE

Based on the foregoing reasons, we amend the judgment to reduce the trial court's award of $15,000.00 to $7,500.00 for bad faith and reduce the reasonable attorney's fees award from $15,000.00 to $3,750.00.  We affirm as amended the default judgment in all other respects.  We further deny Allstate's exception of prescription and Mr. Attamari's answer to the appeal, which requested frivolous appeal damages.

**JUDGMENT AMENDED AND AFFIRMED AS AMENDED; EXCEPTION OF PRESCRIPTION DENIED; ANSWER TO APPEAL DENIED**